COMMONWEALTH *vs.* JOHN D. LAWTON
(and a companion case).

Middlesex.    October 5, 1964. — December 1, 1964.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, CUTTER, KIRK,
SPIEGEL, & REARDON, JJ.

*Arrest. Search and Seizure. Pleading, Criminal,* Indictment. *Practice, Criminal,* Variance.

Where it appeared in a criminal case that on a very hot night a police
    officer learned that a break had just taken place at a house and was
    told that a man in a heavy dark coat had run out of it and across an

---

adjacent golf course toward a street, that shortly thereafter the officer came upon the defendant, attired in a heavy dark coat, at a bus stop near that street, and that the defendant, by obscene replies and out-right refusals to answer, rebuffed the officer's attempts to interrogate him by way of a brief threshold inquiry, the officer reasonably could conclude that probable cause then existed to arrest the defendant for breaking and entering, and the arrest was lawful even though the officer gave the defendant another reason for making it.  [132–133]

A bag and the articles in it, and a silver dollar in a plastic case which had come from a house broken into, taken from the defendant in a criminal case by police officers at a police station after he had been arrested on a street by an officer who had had probable cause for the arrest, were admissible in evidence at the defendant's subsequent trial for breaking and entering in the night time and for possession of burglarious implements.  [134]

Under G. L. c. 277, §§ 25, 35; c. 278, § 9, there was no variance where an indictment charged that the defendant broke and entered the house of a designated man and stole articles of his therein and it could have been found that the property was in his actual or constructive pos-session, even though there was evidence that such property belonged to his wife.  [134]

INDICTMENTS found and returned on September 12, 1963.

Motions to suppress evidence and the merits of the cases were heard by *Gourdin, J.*

*Ronald J. Chisholm* (*Usher A. Moren* with him) for the defendant.

*Donald L. Conn,* Assistant District Attorney (*Ruth I. Abrams,* Assistant District Attorney, with him), for the Commonwealth.

WILKINS, C.J.    These two indictments, respectively for breaking and entering in the nighttime and for possession of burglarious implements (G. L. c. 266, §§ 15, 49), were tried before a judge sitting without jury.  At the trial, which was made subject to G. L. c. 278, §§ 33A–33G, as amended, the defendant was convicted of both crimes, and has appealed.  The errors assigned and argued are (1) to the denial of a motion to suppress evidence made before trial and heard by the same judge who presided at the trial; (2) to the denial of the same motion when renewed at the trial; and (3) to the denial of the defendant's request in each case for a finding of not guilty on all the evidence as matter of law.

1.  We summarize the evidence at the hearing of the motion to suppress before trial. The only witness was Officer Fitzsimmons of the Newton police. On July 24, 1963, about 10:30 P.M. he was in a cruising car when he received information that a break had taken place at 67 Dorset Road, Waban. He learned this from a police radio dispatch to the effect that a woman had just called and reported that, as she entered her house, a man wearing a dark jacket ran out the back door toward the Braeburn Golf Course, which was right in back of the house. Officer Fitzsimmons went to the house where inspectors were interviewing the occupants. Officer Fitzsimmons learned from other officers that the man had run across the golf course toward Fuller Street. About 11:20 P.M. Officer Fitzsimmons, alone in the cruising car, saw the defendant standing at a bus stop at the corner of Commonwealth Avenue and Washington Street, West Newton. This was about two blocks from the Fuller Street entrance of the golf course and a mile from the house where the break occurred. The temperature was very hot, between eighty-five and ninety degrees. The defendant was wearing a heavy black jacket. Officer Fitzsimmons asked him why he was standing there. The defendant in obscene language replied that it was none of the officer's business. Upon being asked his name, the defendant made the same answer. To a question as to where he was coming from, the defendant said "the Newton-Wellesley Hospital," and that if the bus should come, he was going to get on it. Officer Fitzsimmons called by radio for the sergeant in charge at the station, who arrived in a "cruiser" with another officer.

Officer Fitzsimmons then arrested the defendant for being abroad in the nighttime. See G. L. c. 41, § 98, as amended through St. 1957, c. 688, § 1, entitled "Powers and Duties of Police Officers," which reads in part: "During the night time they may examine all persons abroad whom they have reason to suspect of unlawful design, and may demand of them their business abroad and whither they are going . . . . Persons so suspected who do not give a satis-

factory account of themselves . . . may be arrested . . . ."
The unlawful design of which Officer Fitzsimmons suspected
the defendant was breaking and entering, but he was not
charged with that until after he had been booked at the
police station and searched.   Officers there took from him a
silver dollar in a plastic case which the lieutenant in charge
knew had come from a break and was later identified as
coming from 67 Dorset Road.   The officers also took from
the defendant a bag which contained a claw hammer, punch
set, screw driver, chisel, a pair of gloves, a pair of rubber-
soled shoes, and two flashlights, one a wink light identified
as taken in a previous break in Waban.   The defendant
did not answer any of the "regular booking questions,"
and did not give his name until after two hours, namely,
at 1:30 A.M.

The defendant argues that the denial of the motion was
error, because G. L. c. 41, § 98, is unconstitutional in so far
as it authorizes a police officer to make an arrest for being
abroad in the nighttime.   This, it is contended, is contrary
to the Fourth Amendment to the Constitution of the United
States, as permitting an arrest "on suspicion."   It is also
argued that § 98 "is unconstitutionally vague" as affording
no guidance to the police officer, who is the sole judge as to
whether a person gives a satisfactory account of himself.
We shall not decide these questions because there was prob-
able cause for arrest for breaking and entering.   To be
sure, the police officer, who was a layman and not a legal
technician, did not state this to be the ground of arrest dur-
ing the nighttime encounter on the city streets.   But the
citizens of the Commonwealth, whom the police are organ-
ized and exist to protect, and the Commonwealth should
not be conclusively bound or limited by the officer's choice
of words made subjectively in the active execution of his
duties.   A police officer in the solution of a crime and in the
presence of one he thinks committed it is not a judge with
time for mature consideration.   On the contrary, his posi-
tion more nearly resembles that of a sentry at his post in
time of war.   Upon his alertness and judgment depends the

safety of the many. Officer Fitzsimmons was confronted by a practical problem calling for an immediate exercise of judgment. Without delay he had to reach a decision as to whether he had probable cause to hold the defendant or whether he must let the defendant go, an action which might finally and conclusively eliminate the defendant from the case. If the facts known to the officer reasonably permitted a conclusion that probable cause existed for a charge of breaking and entering, the arrest should be treated as legal even though he at first assigned another ground. See *Brinegar* v. *United States,* 338 U. S. 160, 174–176.

We are of opinion that the combination of facts known to Officer Fitzsimmons reasonably permitted such a conclusion. He had learned of a recent break from his superiors and at once went to the house. He was told that a female occupant had seen a man in a heavy dark coat run out of the back door and onto and across the adjacent golf links toward Fuller Street. Soon after, while searching in the vicinity of the Fuller Street entrance to the golf course, he had come upon the defendant attired in a heavy dark coat. He could reasonably conclude that not many men would be abroad that night in that vicinity attired in an article of clothing so unsuited to a temperature of eighty-five to ninety degrees. He followed the elementary and highly reasonable course of attempting to interrogate the defendant by way of a brief threshold inquiry. See *Commonwealth* v. *Lehan,* 347 Mass. 197, 204. He was rebuffed by obscence replies and outright refusals to answer. This reception by the defendant was much more suspicious than that of the "unconvincing reply" (p. 87) which was made to the police officer in *Bell* v. *United States,* 254 F. 2d 82 (Ct. App. D. C.), cert. den. 358 U. S. 885. For other Federal cases of unsatisfactory replies to police officers, see *Ellis* v. *United States,* 264 F. 2d 372 (Ct. App. D. C.), cert. den. 359 U. S. 998; *Robinson* v. *United States,* 283 F. 2d 508 (Ct. App. D. C.), cert. den. 364 U. S. 919, cert. den. sub nom. *Dawson* v. *United States,* 365 U. S. 827, cert. den. sub nom. *Williams* v. *United States,* 365 U. S. 830; *Campbell* v. *United States,* 289 F. 2d 775 (Ct. App. D. C.).

2. The evidence at the trial was not substantially different from that at the hearing on the motion before trial. The defendant does not argue that it was. In fact he argues both motions simultaneously.

The renewed motion was rightly denied.

3. The bag, the articles in it, and the silver dollar were discovered in a reasonable search incident to a lawful arrest. *Commonwealth* v. *Holmes,* 344 Mass. 524, 525, and cases cited. They were admissible in evidence and with the other testimony were ample to prove the crimes charged.

4. The defendant contends that Marjory M. Alberts testified that the house and the articles taken were hers. The indictment for breaking and entering charges that the house and articles belonged to Sidney Alberts, her husband. This was not a variance. See G. L. c. 277, §§ 25, 35; c. 278, § 9. The property, both real and personal, could be found to have been in the actual or constructive possession of the husband. *Commonwealth* v. *Binkiewicz,* 342 Mass. 740, 748–749. See *Commonwealth* v. *McLaughlin,* 103 Mass. 435, 436.

5. The requests for findings of not guilty were rightly denied.

*Judgments affirmed.*