COMMONWEALTH *vs.* EDMOND GUILLORY.

Suffolk. November 5, 1969. — January 12, 1970.

Present: WILKINS, C.J., SPALDING, CUTTER, KIRK, & REARDON, JJ.

*Identification.* *Constitutional Law,* Assistance of counsel. *Practice, Criminal,* Assistance of counsel.

At a trial for assault with intent to commit rape held thirteen months after the crime, at which the victim identified the defendant as her assailant, it was reversible error under *United States* v. *Wade,* 388 U. S. 218, to deny a motion by the defendant to suppress evidence of the victim's identification of the defendant as her assailant at a confrontation at a police station ten months after the crime while he was without counsel, where it appeared that the defendant had been advised that his presence was desired at the station "because of some rapes" and he went there without compulsion, that he was given the constitutional warnings required by *Miranda* v. *Arizona,* 384 U. S. 436, but was not told of his right to counsel at the confrontation, and that discrepancies in the testimony shook the validity of the victim's in-court identification, even though the defendant at the time of the confrontation stated that he did not need counsel and would "let . . . [the victim] look at" him and the victim stated that she had recognized the defendant as her assailant when she entered the station before the confrontation.

Two INDICTMENTS found and returned in the Superior Court on December 6, 1968.

Motions to suppress were heard by *Sullivan,* J., and the cases were tried before him.

*Reuben Goodman* (*Robert W. Banks* with him) for the defendant.

*William A. Doherty,* Assistant District Attorney, for the Commonwealth.

REARDON, J. The defendant was convicted on indictments charging him with assault with intent to rape, and with breaking and entering a dwelling house in the nighttime with intent to commit rape. The trial was subject to G. L. c. 278, §§ 33A–33G. He argues three assignments of error: (1) denial of his motions to suppress; (2) refusal to

admit in evidence a Boston police department journal report; and (3) language in the charge to the jury on the posture of the case.

There was evidence as follows. On December 17, 1967, about 8 P.M., Janet McGowan was alone in her apartment at 58 Westland Avenue, Boston. She had just emerged from a bathtub and, attired in undergarments and a bathrobe, was proceeding from the bathroom through a door to her bedroom when she was grabbed from behind. Her assailant placed his hand over her mouth and advised her not to cry out as he had a knife and she would be killed. He then threw her on a bed, at which time she saw the knife, and attempted to have intercourse with her. She asked him if he wished money and he then permitted her to go to the bathroom where she had left her pocketbook. At this time she observed the face of the man in the bathroom cabinet mirror, the area being well lighted according to her testimony. The $7 which the pocketbook contained was stated by the intruder to be not enough. He again threw her on the bed and made an unsuccessful attempt to rape her. Finally the assailant was induced to leave. Upon his departure the witness noticed that the window and screen in her bedroom had been forced open.

At the trial the complainant testified that she had had five separate opportunities to observe her assailant before he left her apartment and she identified the defendant as that individual. When asked to come to police station 4 in Boston on October 25, 1968, she said she recognized him as she entered the station house and before he was placed before a two way mirror. A Boston police detective testified to the identification at station 4.

The denial of the defendant's motions to suppress presents questions which were discussed in *Commonwealth v. Bumpus,* 354 Mass. 494, and *Commonwealth v. Cooper, ante,* 74. In this case the alleged crime occurred on December 17, 1967. The station house identification took place ten months later on October 25, 1968. The defendant was placed behind a two way mirror by himself save for a white officer who was

near him. He was given the so called "*Miranda* warnings."
He had come to the station house without compulsion, and
after being so warned and told of his right to counsel stated,
"I haven't did anything; I'm not worried. I don't need
anybody. I will see these people and let them look at me."
Previously he had been advised that his presence was desired
"because of some rapes that had occurred on the Division."
At the time of trial he was twenty-one years old. While he
was given the warnings under *Miranda* v. *Arizona,* 384 U. S.
436, these "did not encompass the information contemplated
under" *United States* v. *Wade,* 388 U. S. 218. *Common-
wealth* v. *Cooper, supra,* at p. 83. Nor does it seem to us
that his waiver was without cloud. While not yet under
arrest he was summoned to the police station for a pre-trial
confrontation. As the Supreme Court stated in the *Wade*
case, it is necessary to "scrutinize *any* pretrial confrontation
of the accused to determine whether the presence of his
counsel is necessary to preserve the defendant's basic right to
a fair trial as affected by his right meaningfully to cross-
examine the witnesses against him and to have effective
assistance of counsel at the trial itself." *United States* v.
*Wade, supra,* at p. 227. There was a critical need for
counsel for the defendant at this confrontation, a confronta-
tion decidedly suspect under *Stovall* v. *Denno,* 388 U. S. 293,
294–295. Furthermore, the circumstances of this case are
distinctly at odds with those of *Commonwealth* v. *Robinson,*
355 Mass. 620, which is to be compared. It appears from
the evidence given by an officer that the complainant told the
police on the evening of the assault that most of the lights
were out in the apartment, which was largely contrary to her
testimony at the time of trial. Other discrepancies exist and
are of such a nature as to shake the validity of her in-court
identification of the defendant which is not saved in our
view by the victim's statement that she recognized the
defendant when she entered the station house on October 25,
1968, prior to viewing him in the two way mirror. We
cannot say that the police station identification was harmless
beyond a reasonable doubt and did not taint the in-court

identification. The transcript makes it clear that the police station identification was employed as a prop for a most dubious in-court identification which occurred thirteen months after the crime. *Chapman* v. *California,* 386 U. S. 18. *Commonwealth* v. *Cooper, supra,* at pp. 84–85. See *Palmer* v. *State,* 5 Md. App. 691; *State* v. *Wright,* 274 N. C. 84; *State* v. *Hicks,* 455 Pac. 2d 943. There was error in the denial of the defendant's motions to suppress. Since there must be a new trial we will not deal with the remaining two assignments of error save to observe that with the reporting officer on the stand the defendant was enabled to elicit much of the testimony that he would have been able to present had the police report been admitted. At that time the defendant was given the opportunity to press further on the information contained in the report had he so desired.

<div align="right">

*Judgments reversed.*

*Verdicts set aside.*