COMMONWEALTH *vs.* WILLIAM C. BREEN
(and three companion cases[1]).

Middlesex.    March 2, 1970. — May 5, 1970.

Present: WILKINS, C.J., SPALDING, KIRK, REARDON, & QUIRICO, JJ.

*Arrest. Search and Seizure. Identification. Constitutional Law,* Due process of law. *Robbery. Accessory and Principal. Practice, Criminal,* New trial.

At a joint trial of four defendants for an armed robbery perpetrated just before midnight in a restaurant on a major highway on the outskirts of a suburban community, evidence that ten minutes after the robbery police officers in a cruiser received descriptions of two men involved and within minutes thereafter saw all the defendants, two of whom matched the descriptions received, in a car proceeding in a direction away from the restaurant on the same highway and followed the car, and that the two described defendants acted suspiciously, warranted findings that the officers had probable cause to arrest all the defendants when their car finally stopped and that the arrest and an immediate search of the car were lawful. [446]

A confrontation on a street of four defendants arrested for armed robbery and an eyewitness, who was the only person who had had an opportunity to observe one of the robbers, shortly after the robbery and a few minutes after the arrests, in "the totality of the circumstances" was reasonable and lawful. [446–447]

---

[1] The companion cases are Commonwealth *vs.* James J. McCormack, Commonwealth *vs.* John T. Hurley, and Commonwealth *vs.* William G. Sullivan.

A conclusion that two defendants participated as principals in an armed robbery about midnight in a restaurant was warranted by evidence that two other men, each with a gun, had entered the restaurant and robbed the owner and fifteen minutes later were observed with one of the defendants in a car driven by the other defendant on the same highway as the restaurant and six or seven miles away, and that the stolen money and a holster were found on one of the defendants and the two guns used in the robbery and another gun were found in the car when police officers stopped it. [447–448]

There was no error in a criminal case in denial of a motion by the defendant for a new trial based upon "newly discovered" evidence of incompetency to stand trial where the only evidence thereof offered was that he had received 100% disability compensation for a "mental condition" connected with service in the United States Navy. [448]

TWELVE INDICTMENTS found and returned in the Superior Court on October 7, 1966.

The cases were tried before *Beaudreau,* J.

*David Berman* (*Arthur E. Robbins* with him) for the defendants.

*Leonard M. Frisoli, Jr.,* Assistant District Attorney, for the Commonwealth.

KIRK, J. Each of the four defendants was charged in three indictments with assault with intent to rob while armed with a dangerous weapon and with armed robbery. After a trial subject to G. L. c. 278, §§ 33A–33G, the jury returned verdicts of guilty on all the indictments. Each defendant appeals, with 188 assignments of error based on a total of at least 1,714 exceptions taken before and during the trial. The only assignments of error now argued relate to the denial of the defendants' motions to suppress evidence and for directed verdicts, and to the denial of Breen's motion for a new trial. We consider only the argued assignments. *Commonwealth* v. *Nunes,* 351 Mass. 401, 403.

We summarize the evidence. On September 25, 1966, at approximately 11:50 P.M., the owner and several employees of Giovanni's Restaurant on Route 9 in Framingham were preparing to close the restaurant for the night. Two men were seated at a table near the end of the bar. Norman Lecointre, a bus boy, was seated on a bar stool. John Cullati, the owner, and John Kelly, a bartender, were be-

hind the bar. Cullati had taken the day's receipts from the cash register, placed rubber bands around the bills, and put the money in his pockets. The two men at the table stood up. One of them, identified as Breen, was wearing a "cranberry red" sports jacket. He went around the bar behind Cullati, produced a gun and told Cullati to put his head and hands on the bar. The other man, wearing a beige or tan sweater, stood behind Lecointre with a gun. He was identified as McCormack. The man in the red jacket took the money from Cullati. The two men left the restaurant at midnight or one or two minutes before.

A Framingham police sergeant, responding to a telephone call from Cullati, arrived at the restaurant about six minutes after the robbers had left. The Framingham police issued an all-points bulletin for two men, describing one man as wearing a "cranberry red" sports jacket and the other as wearing a beige or tan sweater. The bulletin was received by radio at 12:08 a.m. by Officers Fitzpatrick and Sullivan of the Wellesley police. The officers parked their cruiser on a ramp leading to Route 9, about twelve feet from and perpendicular to the east bound lane of traffic. The ramp is about six or seven miles from Giovanni's Restaurant. Within minutes the officers saw a Dodge compact-type automobile traveling east on Route 9. In the bright light of the ramp intersection the police officers could see that there were four men in the car, two in front and two in the rear. One of the men in the rear seat was wearing a cranberry-colored jacket, the other a beige or tan sweater. The police officers, proceeding east, followed the car on Route 9 for about three quarters of a mile, when Officer Sullivan, who was driving, put on the high beam headlights. He noticed that the man on the left rear seat, in the beige sweater, turned his face to the left and put his hand to the side of his face; the man on the right turned his face to the right. At this point both officers were satisfied that the clothing of the two men in the rear seat matched the description given in the radio broadcast at 12:08 a.m. They informed their headquarters by radio that they intended to

stop the car in Newton. Officer Sullivan put on the siren and dome light to signal the car to stop. The car did not stop, but continued for about a quarter or a half mile in the breakdown lane, then drove onto Ramsdell Street, a dead-end street in Newton, and continued for approximately 300 feet before finally coming to a stop. Officer Fitzpatrick approached the car with his gun drawn and arrested the occupants, the four defendants. Hurley was the driver, and Sullivan was seated to his right. Breen and McCormack were seated in the rear. Newton police arrived about a minute later, and several minutes after that Lecointre, the bus boy, arrived and identified the defendant Breen. The police thereupon searched the car and found two rolls of bills in rubber bands in Sullivan's pockets. There was a clip-on type holster on the back of Sullivan's belt under his sweater. There were also three fully-loaded automatic weapons and a pair of gloves under the seats of the car.

1. The judge held a voir dire on the defendants' motions to suppress evidence. He found that Officers Fitzpatrick and Sullivan had probable cause to arrest the defendants, and that the seizure of the items in the car was incidental to a lawful arrest. He denied the motions. The defendants assert that the judge was in error.

The Commonwealth concedes that the defendants were under arrest when their car was stopped and they were restrained at gunpoint by the Wellesley police officers. See *Commonwealth* v. *Holmes*, 344 Mass. 524, 526; *Commonwealth* v. *Wallace*, 346 Mass. 9, 16. The question is whether the arrest was lawful. Although the information which the arresting officers possessed was less precise than that possessed by the police in *Commonwealth* v. *Brown*, 354 Mass. 337, 340–343, we conclude that the information they did possess was "sufficient to warrant a prudent man in believing that the . . . [defendants] had committed . . . an offense." *Beck* v. *Ohio*, 379 U. S. 89, 91. *Commonwealth* v. *Holmes*, 344 Mass. 524, 525. See *Commonwealth* v. *Lawton*, 348 Mass. 129, 132–133. The defendants stress the facts that none of the victims had seen or heard a car at the time

of the robbery, and that as far as the police knew only two men had been involved. They rely principally on a California case, *People* v. *Mickelson*, 59 Cal. 2d 448. In that case a tall, white man of large build with dark hair and wearing a red sweater, had committed an armed robbery. A police officer searched the vicinity on foot for about ten minutes, then returned to his car to search a wider area. Six blocks from the scene of the robbery, he saw a vehicle with two men in it coming toward him, and being driven in a suspicious manner. The driver appeared to be a large white man with dark hair, wearing a red jacket or sweater. The officer stopped the vehicle and, after preliminary inquiries to which he received polite and complete answers, made a search, apparently for the gun used in the robbery. He found nothing to connect the men to the armed robbery, but did find a bag of coins that had apparently been taken from public telephone booths. The California court held that while the officer had reason to stop the vehicle for a preliminary inquiry, he had no probable cause to arrest the two men until after he had searched the car, and that since the search of the car was not incidental to a lawful arrest it was illegal. The court noted that the armed robbery had been committed by a single man, that no car was known to have been connected with it, and that the officer arrested two men in a car.

Without intimating that we would reach the same conclusion as did the majority of the Supreme Court of California in the *Mickelson* case,[2] we point out that the case is readily distinguishable from the one before us. The robbery in the *Mickelson* case took place in a metropolitan area. As the initial search by the police officer demonstrated, there was no reason to suspect that an automobile had been used. In such a heavily populated area it was quite likely that even at 2 A.M. there would be more than one tall, dark-haired white man wearing a red sweater. Moreover, when first seen, the car driven by the suspect was going *toward* the

---

[2] See the opinion of Fox, P.J. of the District Court of Appeal in the *Mickelson* case, 26 Cal. Reporter 152. Compare *Terry* v. *Ohio*, 392 U. S. 1, 20-27.

scene of the robbery. In the case before us the robbery took place just before midnight on the outskirts of a suburban community along a major highway. It would be highly improbable in such circumstances that more than one pair of companions, one in a cranberry-colored sports jacket and the other in a beige sweater, would be found in the general vicinity. In view of the location of the restaurant it would also be reasonable for the police to expect that a car would be used as a means of escape. On this premise, the presence of at least a third man, not seen by the victims, to operate the getaway car was to be anticipated. See, e.g., *Commonwealth* v. *Ladetto,* 349 Mass. 237, 240; *Commonwealth* v. *Carita,* 356 Mass. 132, 135–136; *Commonwealth* v. *Salerno,* 356 Mass. 642, 644.

The action taken by the police was in the circumstances altogether reasonable. Ten minutes after the completion of an armed robbery, they had received descriptions of the two men known to have been involved. Within minutes after that, they saw a car with four men on the same road as the restaurant, proceeding away from the scene of the robbery. Two of the men matched the descriptions they had received, and acted suspiciously when they realized they were being followed. To risk allowing the men to escape would have been unthinkable. Common sense required that the car be stopped. See *Commonwealth* v. *Lawton,* 348 Mass. 129, 132–133. A prudent regard for their own safety justified the arrest of the defendants and their detention at gunpoint until help arrived. The arrests and the search which followed them were lawful.

2. The defendants contend that the testimony concerning Lecointre's identification of Breen ten minutes after the arrest of the defendants should have been excluded even though the arrests and identification took place before June 12, 1967, when the rules of *United States* v. *Wade,* 388 U. S. 218, and *Gilbert* v. *California,* 388 U. S. 263, became applicable. *Stovall* v. *Denno,* 388 U. S. 293, 300. They argue that the confrontation on Ramsdell Street "was so unnecessarily suggestive and conducive to irreparable

mistaken identification" that the defendants were denied due process of law. *Stovall* v. *Denno, supra,* at 302.

We think the defendants' argument is answered by what we said in *Commonwealth* v. *Bumpus,* 354 Mass. 494, 499–501, cert. den. sub nom. *Bumpus* v. *Massachusetts,* 393 U. S. 1034. The officers had, as we have held, probable cause to arrest the defendants. The investigation of the robbery, however, was still in progress. It was reasonable for the police to ascertain whether Lecointre, who was the only person who had a good opportunity to observe one of the gunmen, thought that the robber was among the four men arrested. See the *Bumpus* case, at p. 500. The confrontation was, in "the totality of the circumstances" (see the *Stovall* case, at p. 302), reasonable and lawful. *Commonwealth* v. *Bumpus, supra.* *Commonwealth* v. *Connolly,* 356 Mass. 617, 623–624.

3. The defendants Hurley and Sullivan argue that their motions for directed verdicts should have been allowed. Hurley, the driver of the car, contends that there was no evidence that he had any part in the robbery, and that an inference that he participated in the crime could not be drawn from the fact that he associated with persons who committed it, citing *Commonwealth* v. *Fancy,* 349 Mass. 196, 200. Sullivan, on whose person the rolls of bills and the holster were found, contends that at the most the evidence supported a charge against him of receiving stolen goods or being an accessory after the fact, either of which charges would be inconsistent with his guilt as a principal.

We think that the jury were warranted in concluding that both defendants participated as principals in the robbery. Two men, each with a gun, entered and robbed a restaurant at midnight, in a relatively sparsely settled area adjacent to a major highway. Within fifteen minutes the two men were observed in a car driven by Hurley, accompanied by Sullivan, on that same highway, six or seven miles away. In the car were found not only the stolen money and the guns used by the two men, but a third gun as well, hidden under the seats. The jury could reasonably infer that the four had driven together to the restaurant;

that while Breen and McCormack entered the restaurant, Hurley and Sullivan waited outside to observe and to warn of the approach of others, and to keep the escape car in readiness; that Sullivan had a gun in his hand; and that after Breen and McCormack emerged, the three guns were concealed under the seats, the money given to Sullivan, and the car with the four men driven off by Hurley. These inferences were sufficient to sustain verdicts that Hurley and Sullivan were guilty as principals with Breen and McCormack. *Commonwealth* v. *Medeiros*, 354 Mass. 193, 197–198. See *Commonwealth* v. *Cline*, 213 Mass. 225, 226; *Commonwealth* v. *Lavery*, 255 Mass. 327, 333, and cases cited; *Commonwealth* v. *Conroy*, 333 Mass. 751, 755, and cases cited.

4. The last issue argued concerns the denial of Breen's motion for a new trial. The motion was based upon "newly discovered" evidence that Breen was not competent to stand trial. The only evidence offered was that Breen received 100% disability compensation for a "mental condition" connected with his service in the United States Navy. The judge denied the motion. There was no error. A motion for a new trial is addressed to the judge's discretion. *Commonwealth* v. *Dascalakis*, 246 Mass. 12, 25, 32. *Commonwealth* v. *Slaney*, 345 Mass. 135, 142. There was no abuse of discretion here. There was no showing of the nature or extent of the "mental condition." Breen's attorney had stated at the time of sentencing that Breen had been "a great aid to" him in conducting the defence and that Breen "helped guide" him. There had been no request by Breen for a mental examination. The record indicates that the judge gave Breen's motion "all the attention which it warranted." See *Commonwealth* v. *Nunes*, 351 Mass. 401, 404. See also *Commonwealth* v. *Soaris*, 275 Mass. 291, 297; *Commonwealth* v. *Chapin*, 333 Mass. 610, 616–617. The holding of *Pate* v. *Robinson*, 383 U. S. 375, has no application to this case, since Breen was given an opportunity to present whatever evidence he had of his alleged lack of competency.

*Judgments affirmed.*