COMMONWEALTH *vs.* THOMAS LOPES.

Bristol. May 2, 1972. — September 8, 1972.

Present: TAURO, C.J., REARDON, QUIRICO, BRAUCHER, & HENNESSEY, JJ.

*Identification. Practice, Criminal,* Assistance of counsel, Due process of law. *Search and Seizure. Evidence,* Hospital record.

A man who was arrested and placed in a lineup prior to being formally charged with any offence had no right to have counsel present at the lineup. [451]

Where a rape victim had failed to identify her assailant at "maybe four" previous lineups, her positive and unshaken identification through a "two-way mirror" of the defendant from a lineup of seven men of similar appearance was not impermissibly suggestive. [452–454]

There was no error in denying a motion to suppress as evidence a defendant's clothing willingly given to the police by the girl with whom he had lived. [454]

In a rape case, there was no reversible error in admitting in evidence a hospital record describing the victim's condition shortly after the crime. [454]

INDICTMENTS found and returned in the Superior Court on February 4, 1971.

The cases were tried before *Linscott, J.*

*Alexander Whiteside, II* (*Reuben Goodman* with him) for the defendant.

*Donald R. Perry,* Assistant District Attorney, for the Commonwealth.

BRAUCHER, J. The defendant appeals under G. L. c. 278, §§ 33A–33G, from convictions by a jury on two indictments arising out of the same incident: one for assault on the victim with a dangerous weapon and one for rape of a female child under the age of sixteen years. At the

trial in March, 1971, the victim testified that she was fourteen years old.

We summarize the evidence presented to the jury. The victim was walking home from a church supper in New Bedford about 6 P.M. on October 24, 1970. She saw a man walking toward her, "colored but not really dark, you know, tan complexion, and he had a small mustache; and he had on a red like sweatshirt with a hood up, and dark pants." He threatened her with a gun, took her by the arm and took her behind a school. He had her get down on her knees, tied her hands behind her back with a piece of rawhide, put adhesive tape over her eyes and mouth, made her lie down on her stomach while he took off her underpants, had her get up and then lie down on her back, and had intercourse with her. When she tried to scream, he started to strangle her with his hands on her throat. He asked her whether she was a virgin, she said, "Yes," and he said, "Good." He untied the rawhide from one hand and pulled it off the other, took the adhesive tape off her mouth and eyes, and tied her up with her knee socks, underpants and brassiere. He told her to count from 500 backward before moving, and left. After counting to about 400, she untied herself, got partially dressed, went home, and was taken to a hospital and examined by a doctor.

The victim was admitted to the hospital at 8:30 P.M. The hospital record reported superficial abrasive marks on her shoulder blades, remnants of tape about her mouth, bruises on her throat, thick red marks on her wrists, dirt marks and scratches in various places, and bruises, blood and spermatozoa in her vagina. About 9:15 P.M. she gave an account of the incident to a police officer much like that given above.

Early in October, 1970, the defendant moved into the New Bedford apartment of a girl who was pregnant with his child. During the week he looked for work, but Saturdays and Sundays he would spend with her. Both testified that he had probably been with her in the apartment in the afternoon and evening of Saturday, October

24, 1970, but neither had a specific recollection of that day. The baby was born November 25. The defendant had a job at a store from November 5 to December 19, 1970.

Between October 24, 1970, and January 7, 1971, the victim had been to the New Bedford police station on "maybe four" occasions and had looked at lineups, but had not identified anybody. About 10:30 P.M. on Thursday, January 7, 1971, she went again to the police station. She heard a voice in another room that sounded like the voice of the man who had assaulted her, but did not remember mentioning the fact. She then viewed five to seven men in a room through a "two-way mirror" and identified one of them, the defendant, as the man who assaulted her. She also identified him at the District Court hearing on January 20, 1971, and at the trial in the Superior Court on March 4, 1971.

On Friday, January 8, 1971, the girl with whom the defendant was living knew he was in jail. She thought the police would want to know why they were not married and why his clothes were in her house. To evade questions, she put his clothes, most of which were already packed in suitcases, in the trunk of her mother's car. The same day the police did come and ask about the clothes. She denied that she had any of his clothes in the house, and later that day took the clothes to the defendant's mother's house. On Saturday and Sunday, January 9 and 10, the police talked further with the girl, obtained a warrant to search the car for the clothing, and went with her to the mother's house. The mother turned the suitcases over to the girl, who turned them over to the police. They contained a red jacket and pants, which were introduced in evidence. The knee and front portions of the pants were stained with earth similar to a sample taken from the area where the assault took place.

The defendant argues three assignments of error, relating to (1) the identification testimony of the victim; (2) the seizure of the defendant's clothing; and (3) the admission in evidence of the hospital record.

1. The case was tried and the appeal argued after the decisions in *United States* v. *Wade*, 388 U. S. 218, *Gilbert* v. *California*, 388 U. S. 263, and *Stovall* v. *Denno*, 388 U. S. 293, and before the decision in *Kirby* v. *Illinois*, 406 U. S. 682. The defendant moved to suppress the identification testimony of the victim on the ground that he was not informed of his right to have an attorney present during any confrontation and was denied that right. Upon a voir dire the trial judge made findings that the defendant was told he was entitled to have a lawyer at the lineup on January 7, 1971; that he understood the warning and had adequate opportunity to take advantage of it, but that he did not do so and thus waived his right.

The lineup in question, like that in the *Kirby* case, took place after arrest but before the defendant had been indicted or otherwise formally charged with any criminal offence. The *Kirby* case holds that in such a case "the *Wade-Gilbert per se* exclusionary rule" is not applicable. We follow that holding. To the extent that our decisions in *Commonwealth* v. *Cooper*, 356 Mass. 74, 81–84, denial of habeas corpus reversed, *Cooper* v. *Picard*, 428 F. 2d 1351 (1st Cir.), habeas corpus granted, 316 F. Supp. 856 (D. Mass.), *Commonwealth* v. *Guillory*, 356 Mass. 591, 593, and *Commonwealth* v. *Mendes*, 361 Mass. 507, 509–510, assume that a right to counsel in connection with an identification procedure arises at an earlier stage, we no longer follow them. Compare *Commonwealth* v. *Bumpus*, 354 Mass. 494, 501, cert. den. sub nom. *Bumpus* v. *Massachusetts*, 393 U. S. 1034; *Commonwealth* v. *Connolly*, 356 Mass. 617, 623–624, cert. den. sub nom. *Connolly* v. *Massachusetts*, 400 U. S. 843; *Commonwealth* v. *D'Ambra*, 357 Mass. 260, 262–263; *Commonwealth* v. *Ross*, 361 Mass. 665, 677–678. It is therefore unnecessary to consider the validity or effect of the waiver found by the judge.[1]

---

[1] See *Commonwealth* v. *Cooper*, 356 Mass. 74, 83; *Commonwealth* v. *Guillory*, 356 Mass. 591, 593; *Commonwealth* v. *Preston*, 359 Mass. 368, 373–374; *Commonwealth* v. *Mendes*, 361 Mass. 507, 509–510.

"When a person has not been formally charged with a criminal offense, *Stovall* [*Stovall* v. *Denno*, 388 U. S. 293] strikes the appropriate constitutional balance between the right of a suspect to be protected from prejudicial procedures and the interest of society in the prompt and purposeful investigation of an unsolved crime." *Kirby* v. *Illinois*, 406 U. S. 682, 691. Under the *Stovall* case, the defendant was entitled to relief if the confrontation in "the totality of the circumstances," was "so unnecessarily suggestive and conducive to irreparable mistaken identification that he was denied due process of law." 388 U. S. at 302. We have applied that standard in a number of cases where the confrontation occurred before June 12, 1967, the effective date of the *Wade-Gilbert* rule.[2] We have also applied it in a number of cases where the *Wade-Gilbert* rule was inapplicable to a confrontation "in the course of (or immediately following) a criminal episode." *Commonwealth* v. *Bumpus*, 354 Mass. 494, 501.[3] In the present case, since the identification took place two and one-half months after the crime, it was good police procedure to use a lineup rather than a one-to-one confrontation, sometimes called a "showup." See McGowan, Constitutional Interpretation and Criminal Identification, 12 William & Mary L. Rev. 235, 239–241. Compare *Commonwealth* v. *Guillory*, 356 Mass. 591, 592–593; *Commonwealth* v. *Kazonis*, 356 Mass. 649, 651–653; *Commonwealth* v. *Teta*, 358 Mass. 814.

The motion to suppress, the evidence presented on voir dire, the judge's findings and the arguments on appeal

---

[2] *Commonwealth* v. *Dubois*, 353 Mass. 223, 227. *Commonwealth* v. *Blackburn*, 354 Mass. 200, 203. *Commonwealth* v. *Nassar*, 354 Mass. 249, 262, cert. den. sub nom. *Nassar* v. *Massachusetts*, 393 U. S. 1039. *Commonwealth* v. *Sullivan*, 354 Mass. 598, 604–606, cert. den. sub nom. *Sullivan* v. *Massachusetts*, 393 U. S. 1056, denial of habeas corpus affirmed, *Sullivan* v. *Scafati*, 428 F. 2d 1023 (1st Cir.). *Commonwealth* v. *Salerno*, 356 Mass. 642, 647. *Commonwealth* v. *Kazonis*, 356 Mass. 649, 651–653. *Commonwealth* v. *Breen*, 357 Mass. 441, 446–447. *Commonwealth* v. *Jackson*, 359 Mass. 742. *Commonwealth* v. *McGrath*, 361 Mass. 431, 434–438.

[3] See *Commonwealth* v. *Robinson*, 355 Mass. 620, 622, n. 1; *Commonwealth* v. *Connolly*, 356 Mass. 617, 623–624; *Commonwealth* v. *D'Ambra*, 357 Mass. 260, 262–263; *Commonwealth* v. *Gray*, 357 Mass. 771; *Commonwealth* v. *Stroud*, 361 Mass. 870.

were directed primarily to the *Wade-Gilbert* rule and waiver thereof rather than to the *Stovall* standard. The judge found that the defendant appeared in the lineup as one of seven men, all standing, that he was about twenty-one and the ages of the others ranged from eighteen to forty-five, that at least three of the men were of about the same age, size and weight as the defendant, that the police informed him of the lineup and its purpose and of his right to have an attorney at the lineup, and that he made no request for an attorney but willingly and voluntarily took part in the lineup. There was evidence that the victim had a good opportunity to observe her assailant before the crime, gave a good description of him, failed to identify anyone at "maybe four" previous lineups, and was not coached by the police before the lineup in question. The victim testified on voir dire that "they all seemed to look similar," and, "I guess they tried to get men that looked, you know, sort of like him." Her identification of the defendant was positive, consistent and unshaken. The defendant has not suggested to us any basis for concluding that the lineup was impermissibly suggestive, and we see no such basis. Compare Sobel, Assailing the Impermissible Suggestion: Evolving Limitations on the Abuse of Pre-Trial Criminal Identification Methods, 38 Brooklyn L. Rev. 261, 301–308; note, 55 Minn. L. Rev. 779, 796–814.

The fact that a "two-way mirror" was used does not provide such a basis. As we have noted (*Commonwealth* v. *Tempesta*, 361 Mass. 191, 193, n. 3), the United States Court of Appeals has recently condemned a "one-way glass viewing in a police station of which the suspect is ignorant" as a "flagrant constitutional violation," unless the defendant has counsel present. *Allen* v. *Moore*, 453 F. 2d 970, 974 (1st Cir.). That case dealt with various pre-trial identifications which we had assumed to be improper on other grounds. *Commonwealth* v. *Balukonis*, 357 Mass. 721, 724–725. We have passed on identifications through "two-way mirrors" in a number of other cases. See *Commonwealth* v. *Sullivan*, 354 Mass. 598,

606; *Commonwealth* v. *Guillory*, 356 Mass. 591, 592–593; *Commonwealth* v. *Teta*, 358 Mass. 814. When counsel for the defendant is present, the "two-way mirror" can be used to avoid suggestiveness by separating the suspect from his lawyer during the viewing. Whether or not counsel is present, the "two-way mirror" may protect the witness from justifiable fear of harassment and retaliation. Compare *Commonwealth* v. *Wilson*, 357 Mass. 49, 53–55, cert. den. sub nom. *Wilson* v. *Massachusetts*, 400 U. S. 823. It may also serve to save an innocent but insecure suspect from engaging in apparently inculpatory conduct. Similar advantages have sometimes been sought by asking the witness to view a photograph of a lineup. See *People* v. *Lawrence*, 4 Cal. 3d 273, cert. den. sub nom. *Lawrence* v. *California*, 407 U. S. 909; note, 33 U. of Pittsburgh L. Rev. 307, 312–315; note, 62 J. of Crim. L., Criminology and Police Science, 363, 372–374. The present case is not one of a viewing "of which the suspect is ignorant," and we do not believe that the use of a "two-way mirror" renders an otherwise fair lineup impermissibly suggestive.

2. The judge found that the defendant's mother willingly produced the defendant's clothes and gave them to the girl with whom he lived and the girl gave them to the police. He denied a motion to suppress the clothing. There was no error. *Commonwealth* v. *Martin*, 358 Mass. 282, *Commonwealth* v. *Appleby*, 358 Mass. 407, 411. *Commonwealth* v. *Moore*, 359 Mass. 509, 513. *Commonwealth* v. *Mendes*, 361 Mass. 507, 512–514.

3. There was no reversible error in the admission in evidence of the hospital record. G. L. c. 233, § 79. Compare *Commonwealth* v. *Izzo*, 359 Mass. 39, 42–44; *Commonwealth* v. *Franks*, 359 Mass. 577, 580–581; *Commonwealth* v. *Montmeny*, 360 Mass. 526, 527–530.

*Judgments affirmed.*