COMMONWEALTH *vs.* MICHAEL SIMMONDS.

Hampden. March 5, 1982. — May 12, 1982.

Present: HENNESSEY, C.J., ABRAMS, NOLAN, & O'CONNOR, JJ.

*Identification. Constitutional Law,* Assistance of counsel. *Due Process of Law,* Identification. *Evidence,* Other offense, Impeachment, Hearsay. *Practice, Criminal,* Mistrial, Assistance of counsel.

A criminal defendant who was not afforded assistance of counsel at a pretrial lineup was denied neither his Sixth Amendment rights nor his rights under art. 12 of the Massachusetts Declaration of Rights where the lineup took place before the defendant was indicted or formally charged with a criminal offense. [237-238]

Evidence did not support a defendant's claim that he was deprived of due process of law by being misinformed by the police of the purpose of a pretrial lineup leading him not to seek the advice of counsel prior to his participation in the lineup. [238-239]

At a pretrial hearing on the defendant's motion to suppress identifications of him made at a lineup, there was sufficient evidence to warrant a finding that the identification procedure was not unnecessarily suggestive. [239-240]

The judge at a criminal trial did not abuse his discretion, in the circumstances, in denying the defendant's motion for a mistrial based on the testimony of a police officer which allegedly informed the jury of the defendant's prior criminal activity; where the defendant's trial attorney failed to make a motion to strike the officer's testimony or request that the judge give a curative instruction, the defendant could not complain of the judge's failure to take such action. [240-242]

At a criminal trial, it was not reversible error to admit for impeachment purposes testimony of a police officer to show that a defense witness made a prior statement to him that was inconsistent with her testimony on direct examination. [242-243]

INDICTMENTS found and returned in the Superior Court Department on November 5, 1980.

The cases were tried before *Cross, J.*

The Supreme Judicial Court granted a request for direct appellate review.

*Patricia A. O'Neill* for the defendant.

*Dianne M. Dillon,* Assistant District Attorney, for the Commonwealth.

NOLAN, J.  The defendant was tried to a jury and found guilty of assault with intent to rape (G. L. c. 265, § 24), breaking and entering a dwelling in the nighttime with intent to commit a felony, and making an assault on an occupant therein (G. L. c. 266, § 14).  Prior to trial, the trial judge denied the defendant's motion to suppress identifications of him made at a lineup by the victim and a witness to these offenses and a victim of an unrelated offense.  The defendant received a sentence of life imprisonment on the breaking and entering indictment and a sentence of from five to seven years on the assault with intent to rape indictment, to be served concurrently with the life imprisonment sentence.  He appealed his convictions and we granted his application for direct appellate review.  The defendant argues that the judge erred in (1) denying the motion to suppress the identifications; (2) denying the defendant's motion for a mistrial based on a witness's statement; and (3) admitting certain hearsay testimony. There was no reversible error.

1. *The motion to suppress the identifications.*  The defendant alleges that police conduct during a pretrial lineup violated his right to counsel and due process and that all evidence identifying the defendant as the perpetrator of the crimes charged should have been suppressed.  The judge made the following. findings in ruling on the defendant's motion to suppress.

On Tuesday, October 21, 1980, the victim, a nun, retired to bed at about 9:30 P.M.  Shortly after midnight, she was awakened by a man standing in her bedroom doorway. Her bedroom was illuminated by street lights and by lighting from the hallway.  The man jumped on her bed, straddling her.  They struggled for some minutes, during which time she screamed and he tried to pull down the covers and pull up her nightgown.  Her nose was broken during the struggle.  Finally they both fell to the floor and the assailant ran from the room.  During the fight, they were face to face.

Another nun responded to the victim's screams and ran out into the hallway of their residence. She saw a man come out of the victim's room, cross the hall and go down the stairs. The hallway was illumined by night lights and by street lights.

Both women gave descriptions of the assailant to the police. On October 22, 1980, each sister independently viewed photographs at the Springfield police department. Neither woman identified anyone. Later that day, both sisters independently selected a photograph of the defendant from another array of photographs and stated that the subject of the photograph looked most like the assailant. On October 23, 1980, the sisters viewed a group of photographs which included a picture of the defendant, but not the same picture as they had seen the day before. When the victim saw the picture of the defendant, she doubled over, trembling. She said she thought it was her assailant, but did not say she was certain. The second nun also selected the photograph of the defendant. Later that evening, the sisters were again separately shown the same group of photographs. The victim again exhibited a physical reaction to the photograph of the defendant but did not commit herself. The second nun again selected the photograph of the defendant as looking most like the man she had seen in the convent two days earlier.

At approximately 10:45 P.M. that night the police went to the defendant's home. They told him that they were investigating some serious crimes and asked if he would be willing to participate in a lineup. He agreed to accompany them to the police station. At 11:05 P.M., he was advised of his Miranda rights and signed a card acknowledging that he had read and understood those rights. The police did not consider him to be under arrest at that point. The police prepared a lineup consisting of seven black men including the defendant.

The victim viewed the lineup through a one-way glass. Each man was asked to step forward, face right and left. When the defendant stepped forward, the victim clenched

the police officer's hand. She listened to each voice without knowing which man was speaking. When she heard the defendant's voice, she positively identified him. The victim then left the room and the second nun entered. The second nun positively identified the defendant.

The judge viewed a re-creation of the lineup at the police station and viewed a photograph of the men in the lineup as they appeared that night. He found that all the men fit the general description given to the police, that nothing suggestive was said or done by any of the witnesses and that each of the witnesses had a good opportunity to view the man at the time of the crime. He ruled that the lineup was not suggestive and not conducive to misidentification. He further ruled that no right to counsel arose since the identification procedures were at the pre-arrest and pre-indictment stage. The judge found it unnecessary to consider the validity or effect of the waiver of counsel.

The defendant contends that his Sixth Amendment rights under the United States Constitution and his rights under art. 12 of the Massachusetts Declaration of Rights were violated because he was deprived of the assistance of counsel at the lineup. He argues that his right to counsel had attached, even though formal charges had not been obtained, because he was the subject of a warrantless arrest based on probable cause.

The case of *Kirby* v. *Illinois*, 406 U.S. 682 (1972), is dispositive of the defendant's claim. In *Kirby*, the Supreme Court held that there is no right to counsel at identification procedures which take place before the defendant has been indicted or otherwise formally charged with a criminal offense. The right to counsel attaches "at or after the initiation of adversary judicial criminal proceedings — whether by way of formal charge, preliminary hearing, indictment, information, or arraignment. . . . For it is only then that the government has committed itself to prosecute, and only then that the adverse positions of government and defendant have solidified. It is then that a defendant finds himself faced with the prosecutorial forces of organized society, and

immersed in the intricacies of substantive and procedural criminal law." *Id.* at 689. In *Commonwealth* v. *Lopes,* 362 Mass. 448, 451 (1972), we followed that holding, as we have in its progeny. See *Commonwealth* v. *Kudish,* 362 Mass. 627, 631 (1972); *Commonwealth* v. *Chase,* 372 Mass. 736, 743 (1977); *Commonwealth* v. *Clifford,* 374 Mass. 293, 302 (1978). Although this court has the power to extend greater protection under our State Constitution than is demanded by the Federal Constitution, see, e.g., *Commonwealth* v. *Soares,* 377 Mass. 461, cert. denied, 444 U.S. 881 (1979), we have not interpreted art. 12 of our Declaration of Rights to require that a right to counsel arises at pre-indictment identification procedures and we do not rule so now. Since the lineup in the case before us took place before the defendant was indicted or formally charged, his constitutional right to counsel was not violated. It is therefore unnecessary to consider the validity or effect of the waiver of the right to counsel. *Commonwealth* v. *Lopes, supra.*

The defendant argues, in the alternative, that the conduct of the police, misinforming him of the purpose of the lineup, was a deprivation of due process that led him not to seek the advice of counsel prior to participating in the lineup. He argues that the identifications should be suppressed for this reason. In any event the record reveals nothing improper in the conduct of the police here. The judge found that the police went to the defendant's residence, informed him that they were investigating some serious crimes and asked if he would be willing to participate in a lineup. The judge further found that the defendant voluntarily agreed to accompany them to the police station and that the police did not consider the defendant to be under arrest at that point. The judge's findings are well supported by the evidence. There is no evidence that the police deceived the defendant into accompanying them to the police station. There is no evidence of police coercion or deception. It is true that the police did not inform him that he had been tentatively identified by the victim and a witness as the perpetrator of the crimes. However, there is no support for the

defendant's assertion that this failure should render the identification inadmissible. The defendant's reliance on cases which have held that police trickery invalidated a defendant's waiver of Miranda rights is misplaced. In addition to the fact that the record does not show police trickery, the defendant did not make any incriminatory statements and it is well settled that a lineup procedure does not violate a defendant's constitutional privilege against self-incrimination. *Kirby, supra* at 687-688.

Although it is established that a suspect is not entitled to counsel at a pre-arrest identification procedure, the defendant is correct, of course, in arguing that due process considerations are applicable to identification procedures conducted prior to arrest. *Commonwealth* v. *Chase,* 372 Mass. 736, 742 (1977). *Stovall* v. *Denno,* 388 U.S. 293, 302 (1967). "When a person has not been formally charged with a criminal offense, *Stovall* strikes the appropriate constitutional balance between the right of a suspect to be protected from prejudicial procedures and the interest of society in the prompt and purposeful investigation of an unsolved crime." *Kirby* v. *Illinois,* 406 U.S. 682, 691 (1971). See *Commonwealth* v. *Bumpus,* 354 Mass. 494, 500-502 (1968), cert. denied, 393 U.S. 1034 (1969). Under *Stovall, supra* at 302, a defendant is entitled to relief if the confrontation "was so unnecessarily suggestive and conducive to irreparable mistaken identification that he was denied due process of law." In deciding whether a lineup was unnecessarily suggestive the judge is to consider the totality of the circumstances surrounding it. *Id.* The burden is on the defendant to establish by a preponderance of the evidence that impermissibly suggestive procedures were used at the lineup. *Commonwealth* v. *Botelho,* 369 Mass. 860, 867 (1976).

The judge below concluded that "not only was the lineup not unnecessarily suggestive, it was not suggestive at all. It was not conducive to misidentification." Our function on review is to consider whether the evidence supported the judge's findings of fact, giving due weight to his superior opportunity to observe and weigh testimony. We then deter-

mine whether the findings justify the judge's conclusion of law. *Botelho, supra* at 868. "If the judge's careful findings regarding the identification of the defendant are supported by the evidence, we are not likely to disturb them." *Commonwealth* v. *Clifford,* 374 Mass. 293, 304 (1978).

The defendant contends that the lineup was unnecessarily suggestive because of the appearance of the participants. There were seven individuals in the lineup including the defendant. Four of the seven had moustaches. The defendant did not have a moustache and the witnesses had described the assailant as clean shaven. In addition, several of the men wore regulation police pants. We believe that the participants' facial hair and wearing apparel are factors to be considered in determining the fairness of the confrontation, but they are not dispositive. See *id.* The judge below not only heard testimony concerning the lineup but also viewed a re-creation of the lineup at the police station and viewed a photograph of the men in the lineup as they appeared that night. He found that "[n]othing suggestive was said or done with any of the witnesses. All of the men fit the general description given the police. None was distinctive in any way. Each witness had a good opportunity to view the man at the time of the crime, so each had a good basis for identification." We have viewed the picture and we think the judge was warranted in concluding that the identification procedure was not unnecessarily suggestive. There was no error in the denial of the motion to suppress.

2. *Motion for a mistrial.* The defendant argues that it was error for the judge to deny his motion for a mistrial based on the testimony of a police officer. The officer was asked a question concerning a conversation he had with the defendant after the lineup. The officer responded that "[h]e knew he had already been picked out in the lineup as an individual that had assaulted one party and raped her and attempted . . . ."[1] Defense counsel objected and moved

---

[1] A woman, seventy-six years old, who had been raped earlier the same night as the attack on the victim had picked out the defendant's photograph, identifying him as her assailant.

for a mistrial based on the contention that the jury now knew that the defendant had been accused of rape and since the charge in the present case was not rape but assault with intent to rape, the jury had been informed that the defendant had been charged with another crime. The judge asked defense counsel if he wanted him to say anything to the jury but defense counsel replied that he did not. Defense counsel did not make a motion to strike. During his instructions the judge discussed the crime of assault with intent to rape. He briefly defined rape and then said, "Now, the charge here is not rape. It's assault with intent to rape." He then discussed the elements of the latter offense. Defense counsel renewed his motion for a mistrial following the judge's charge. The judge denied the defense counsel's renewed motion for a mistrial. Defense counsel argues that the judge's instruction that the defendant was not charged with rape served to highlight the earlier testimony of the police officer.

Ordinarily, evidence which serves to inform a jury of a defendant's prior criminal activity is not admissible. *Commonwealth* v. *Nassar*, 351 Mass. 37, 45 (1966). We have held that the admission of such evidence over objection may be prejudicial error. *Id.* In the present case, although the defendant objected to the officer's testimony, he did not make a motion to strike but only a motion for a mistrial, which was denied. The decision whether to declare a mistrial is a matter within the judge's discretion. *Commonwealth* v. *Hoffer*, 375 Mass. 369, 372-373 (1978). No showing of an abuse of such discretion has been made by the defendant. Since one of the crimes involved in this case was assault with intent to rape and since this comment is an obscure one, we are not convinced that its admission "could have appreciably influenced the jury or tainted their verdict." *Commonwealth* v. *Vanetzian*, 350 Mass. 491, 495 (1966). *Commonwealth* v. *Billings*, 6 Mass. App. Ct. 884 (1978). We note also that the judge offered to give a cautionary instruction to the jury but defense counsel declined the offer. Since the defendant did not make a motion to strike or request that the judge give a curative instruction,

he cannot complain of the judge's failure to take these actions. *Commonwealth* v. *Johnson,* 374 Mass. 453, 458 (1978). When read in its entirety the judge's charge was fair and adequate. There was no error in the judge's denial of the motion for mistrial.

3. *Impeachment testimony.* Finally, the defendant argues that it was reversible error for the judge to admit certain testimony because it was hearsay. The Commonwealth contends that the testimony was properly admitted as a prior inconsistent statement of a defense witness. At trial, the defendant's wife testified on direct examination that on October 20, 1980, she had a fight with the defendant and scratched the right side of his face. She went on to testify that on the night of the crimes charged, the defendant was at home with her. On cross-examination, Mrs. Simmonds testified that when police officers had asked her about scratches on the defendant's hand she told them that "we had a fight and I told them if there [were] scratches, I didn't put them there." A police officer, Michael Sands, testified to the conversation that he had with Mrs. Simmonds following the defendant's arrest, in which she told him that she had fought with the defendant but had not scratched him. It is unclear from Officer Sands's testimony whether the conversation or the fight took place on October 22 or 23.

It is a well-settled rule of evidence that if a witness makes a statement relevant to an issue on trial, the adverse party has the right to "show that the witness has made previous inconsistent or conflicting statements either by eliciting such statements upon cross-examination of the witness . . . or by proving them by other witnesses." *Commonwealth* v. *West,* 312 Mass. 438, 440 (1942), and cases cited. It is not necessary that the prior statement contradict in plain terms the testimony of the witness. "It is enough if the proffered testimony, taken as a whole, either by what it says or by what it omits to say, affords some indication that the fact was different from the testimony of the witness whom it is sought to contradict." *Id.,* and cases cited. See P.J. Liacos, Massachusetts Evidence 135-136 (5th ed. 1981).

It was not reversible error to admit the officer's statement. Mrs. Simmonds's previous statement was inconsistent with her testimony on direct examination that she had scratched the defendant's face. The testimony was therefore admissible for impeachment purposes. While it is unclear as to when the fight occurred, we do not think this confusion is enough to make the admission of the evidence reversible error.

We rule that the motion to suppress was properly denied and that there were no errors at the trial which require reversal.

*Judgments affirmed.*