COMMONWEALTH *vs.* WILLIAM J. KAZONIS.

Worcester. November 3, 1969. — February 2, 1970.

Present: WILKINS, C.J., SPALDING, CUTTER, KIRK, & REARDON, JJ.

*Identification. Constitutional Law,* Due process of law.

In a criminal case arising from a robbery of a bank by four men, where it appeared that a witness, while engaged in parking his automobile near the bank immediately after the robbery, briefly observed the four men outside the bank, the evidence required conclusions that a confrontation at police headquarters about two months after the robbery was conducted in a manner so "impermissibly suggestive" and conducive to misidentification as to amount to a denial of due process of law and to taint an identification of the defendant as one of the four men by the witness at such confrontation, and that an in-court identification of the defendant as one of the four men by the witness at the trial some two years after the robbery should have been excluded because the Commonwealth failed to establish that the in-court identification was not the product of the tainted pre-trial identification.

INDICTMENTS found and returned in the Superior Court on March 3, 1966.

The cases were tried before *Sullivan,* J.

*Joseph J. Balliro* for the defendant.

*Stanley J. Jablonski,* Assistant District Attorney (*P. Stephen Turo,* Assistant District Attorney, with him) for the Commonwealth.

SPALDING, J. The defendant was convicted under twelve indictments arising out of an armed robbery of a bank.[1] He appeals under G. L. c. 278, §§ 33A–33G.

On December 16, 1965, four men robbed the Shrewsbury

---

[1] The offences charged in the various indictments are: robbery while armed, assault with a dangerous weapon, assault and battery, larceny of an automobile, and confining certain persons for the purpose of stealing from a bank.

Bank and Trust Company in Shrewsbury. One of the robbers entered the offices of the bank's president, Barry Krock, and was observed by a teller, Alice Frappier, and a customer, Arthur W. Harvey, Jr., who was with Krock at the time. Immediately after the robbery, the four men were observed outside the bank by Gene R. Campanale who had just arrived in his car at the bank's parking lot. On the basis of the testimony of the aforementioned witnesses, the defendant was identified as the man in Krock's office, and as one of the four men standing outside the bank beside a car. In the course of the trial the defendant excepted to several rulings relating to these identifications. Assignments involving these rulings include limitations placed on his cross-examination of certain witnesses, and denial of motions to compel the Commonwealth to produce pre-trial statements and photographs used in pre-trial identification. The defendant especially complains of the denial of his motion to exclude the in-court identification of the defendant by the witness Campanale. This in-court identification, it is urged, was tainted by a pre-trial identification procedure that was lacking in due process. Since we are of opinion that this last contention must be sustained and is ground for reversal, we do not discuss the other assignments of error. They are for the most part ancillary to the identification in question, and are not likely to arise on a retrial.

The alleged error in refusing to grant the defendant's motion to exclude Campanale's in-court identification of the defendant arises out of the following evidence introduced at the trial. Campanale was driving slowly between two cars into the parking lot of the bank when he observed a car parked a few feet away. He saw one man seated in the car, one man standing close to it on the far side from him, and two men standing on the stairs of the bank. During the brief period (about a minute) that Campanale was endeavoring to park his car he observed all four men, and looked at the defendant for about twenty or twenty-five seconds. On January 4, 1966, Campanale was interviewed by the police concerning the robbery. On that date, and

later on January 12, he was shown photographs and slides, including pictures of Kazonis and the three other men seen at the bank. Although he did identify two of the men, and one man who was not there, he did not select the photograph of the defendant. At the trial he identified the defendant as the man standing near the car in the parking lot. There was evidence that Campanale had made a prior statement identifying this man as Strazzula, one of the men tried for the robbery, though Campanale at the trial testified that he could not remember having done so.

On February 15, 1966, almost two months after the robbery, Campanale was taken to the State police headquarters, where he was given a gray jacket to put on and seated near a teletype machine. He was told to "look around." Through an opening he noticed two men in a doorway talking to a police officer, one of whom was several inches taller than the other. The former was identified by Campanale as the defendant.[1]

The questions presented are: (1) whether the pre-trial identification was so unnecessarily suggestive as to amount to a violation of due process; and (2) whether the in-court identification was a product of this identification.[2]

When a pre-trial confrontation of a witness and suspect is conducted in a manner "unnecessarily suggestive and conducive to irreparable mistaken identification" there is a denial of due process of law. *Stovall* v. *Denno, Warden*, 388 U. S. 293, 302. It was there said, "This is a recognized ground of attack upon a conviction independent of any right to counsel claim. *Palmer* v. *Peyton*, 359 F. 2d 199 (C. A. 4th Cir. 1966)." While the boundaries of this doctrine have not yet been precisely defined, the Supreme Court

---

[1] It appears that one DeFuria, a State police officer, had telephoned to the defendant's lawyer and asked that the defendant come to police headquarters to be identified. After the viewing of the defendant, described above, by Campanale, Lt. DeFuria told the defendant that the "people didn't show up." He then said to the defendant's counsel, "I'll see you later, Joe. Thanks for coming."

[2] We are not concerned with questions about the lack of effective assistance of counsel in a pre-trial lineup, since the case arose before the decisions in *United States* v. *Wade*, 388 U. S. 218, and *Gilbert* v. *California*, 388 U. S. 263, which in *Stovall* v. *Denno, Warden*, 388 U. S. 293, were held not to be retroactive.

Commonwealth *v.* Kazonis.

has stressed several factors as guidelines for evaluating the fairness of a confrontation.   In the *Stovall* case the confrontation in a hospital room of a recently apprehended suspect was reasonable because the victim was critically wounded and might soon die.   In *Simmons* v. *United States,* 390 U. S. 377, 384–386, a pre-trial identification by photograph, which concededly fell "in some respects . . . short of the ideal," was likewise found not "impermissibly suggestive."   There it was essential to further police investigation, and the opportunity to observe at the time of the crime and the lack of suggestion in the pre-trial procedure left little possibility of misidentification.   As to our own cases on this subject, see *Commonwealth* v. *Bumpus,* 354 Mass. 494, *Commonwealth* v. *Nassar,* 354 Mass. 249, *Commonwealth* v. *Blackburn,* 354 Mass. 200, and *Commonwealth* v. *Sullivan,* 354 Mass. 598, 605.   In a case where the confrontation occurred some ten months after the crime, where the witness had given conflicting statements on her ability to observe, and where the absence of a lineup was itself suggestive, we have said very recently that a pre-trial identification of a suspect alone with a police officer was "a confrontation decidedly suspect under *Stovall* v. *Denno."   Commonwealth* v. *Guillory, ante,* 591, 593.

The evidence here presents a situation significantly different from those confrontations held to be consistent with due process.   The present circumstances reveal a confrontation which was highly conducive to misidentification, and which cannot be justified by urgency, efficient police work, or some other relevant factor.   Campanale's opportunity to observe the defendant was fleeting and subject to the distraction of several other elements entering his field of vision while he steered a car into a parking space.   By his own testimony he observed the defendant for about twenty or twenty-five seconds, and at the time was unaware of the just completed robbery.   On two occasions he failed to select the defendant's photograph from a group of photographs. On one occasion he identified a man other than the defendant as the man by the car.   Since almost two months

had elapsed from the date of the crime, and the defendant had voluntarily reported to the State police on the day in question, it is difficult to see why such a highly suggestive confrontation was necessary. It has been said that "A major factor contributing to the high incidence of miscarriage of justice from mistaken identification has been the degree of suggestion inherent in the manner in which the prosecution presents the suspect to witnesses for pretrial identification." *United States* v. *Wade*, 388 U. S. 218, 228.

Our conclusion that the lineup was unduly suggestive in the circumstances does not, however, dispose of further inquiry. It is the in-court identification which is at issue, and accordingly we must decide whether this was properly allowed as occurring independently of the pre-trial confrontation. "The Commonwealth may establish 'by clear and convincing evidence that the in-court identifications were based upon observations of the suspect other than the lineup identification.' *United States* v. *Wade*, 388 U. S. at 240." *Commonwealth* v. *Cooper, ante,* 74, 84. Applying the relevant criteria stated in *Commonwealth* v. *Cooper,* at page 84, we think it highly unlikely that an in-court identification more than two years after the crime could have occurred independently of the confrontation in question. Campanale's opportunity to observe was limited; on two occasions he failed to select photographs of the defendant; on one occasion he identified another man as standing by the car (a position in which he ultimately placed the defendant), and there was an interval of almost two months between the crime and the confrontation. Nor did Campanale assert that he would have been able to identify Kazonis, independently of the prior confrontation. Under the rule set forth in *United States* v. *Wade*, 388 U. S. 218, 240, we cannot say that the Commonwealth has established "by clear and convincing evidence" that the in-court identification was not the product of the tainted pre-trial identification.

*Judgments reversed.*
*Verdicts set aside.*