COMMONWEALTH vs. MARVIN BODDEN.

Suffolk.  November 10, 1983. — March 6, 1984.

Present: HENNESSEY, C.J., WILKINS, LIACOS, ABRAMS, & O'CONNOR, JJ.

*Identification.  Practice, Criminal,* Speedy trial, New trial.  *Constitutional Law,* Speedy trial.

A criminal defendant whose convictions were reversed by the Appeals
Court was not entitled, either pursuant to the provisions of Mass. R.
Crim. P. 36, 378 Mass. 909 (1979), or as a matter of constitutional
right, to dismissal of the charges against him on the ground that he was
denied his right to a speedy retrial where his motion to dismiss was
filed within one year from the date of the issuance of the court's
rescript, and where he failed to assert his right to a speedy trial during
most of the delay and failed to show prejudice resulting therefrom.
[357-359]

Evidence at a hearing on a motion to suppress that the victim had an
opportunity to "quite easily" observe the defendant at the time of the
crime for a period of between five and ten minutes, considered with all
the circumstances, was sufficient to warrant a finding that the victim's
in-court identification of the defendant had a source independent of
the appearance of the defendant before the victim at a hospital im-
mediately following the unlawful arrest of the defendant. [359-363]

COMPLAINTS received and sworn to in the Boston
Municipal Court Department on October 2, 1979.

Following review by the Appeals Court, a motion to sup-
press was heard in the Superior Court by *Garrity,* J., and a
new trial was held before *Morse,* J.

After review was sought in the Appeals Court, the Su-
preme Judicial Court ordered direct appellate review on its
own initiative.

*James H. Packer* for the defendant.

*John N. Tramontozzi,* Assistant District Attorney, for the
Commonwealth.

WILKINS, J.  On March 6, 1981, the Appeals Court released an opinion in which it reversed the defendant's convictions of assault and battery by means of a dangerous weapon and armed robbery.  *Commonwealth* v. *Bodden*, 11 Mass. App. Ct. 964 (1981).  The Appeals Court concluded that the defendant had been arrested without probable cause and that the victim's in-court identification of the defendant could not be admitted at any retrial of the defendant unless on remand a judge should first rule that the in-court identification would not be tainted by the victim's viewing of the defendant shortly after his unlawful arrest. *Id.* at 965.

A further hearing was held in the Superior Court on the defendant's motion to suppress the in-court identification. The judge ruled that the victim's memory of the defendant at the time of the crime was not tainted by the victim's observation of the defendant immediately following his arrest.  The defendant was again convicted of the two crimes. He appeals, challenging the judge's ruling permitting the in-court identification.  He further contends that he was denied his right to a speedy retrial.  There was no error.

1.  The defendant argues that he was entitled to dismissal of the charges pursuant to the provisions of Mass. R. Crim. P. 36, 378 Mass. 909 (1979), and as a matter of constitutional right.

He asserts that, pursuant to Mass. R. Crim. P. 36 (b) (1) (D), 378 Mass. 909 (1979), his motion to dismiss the charges against him had to be allowed.  This portion of rule 36 states that "[i]f a retrial of the defendant is ordered, the trial shall commence within one year after the date the action occasioning the retrial becomes final, as extended by subdivision (b) (2) [providing for the exclusion of certain periods] of this rule."  We considered recently the application of rule 36 (b) (1) (D) in *Commonwealth* v. *Levin*, 390 Mass. 857 (1984), and held that "a reversal requiring a new trial is not final before issuance of the rescript by the appellate court," leaving open the question whether the one-year period commences on the date of issuance of the rescript or on the date

the rescript is received and docketed in the lower court. *Id.* at 860 & n.4.[1]

Under the holding of the *Levin* case, the defendant was not entitled to a dismissal of the charges. The opinion of the Appeals Court reversing the defendant's convictions and ordering further proceedings in the Superior Court was issued on March 6, 1981. The rescript was issued twenty-eight days later, on Friday, April 3, 1981, pursuant to Mass. R. A. P. 23, as appearing in 367 Mass. 920 (1975), and was docketed in the Superior Court clerk's office on Monday, April 6, 1981. The defendant's motion to dismiss for lack of a speedy trial had been filed on April 1, 1982, within one year of the date of the issuance of the rescript. Thus, on April 1, 1982, the date his motion was filed, the defendant was not entitled to a dismissal of the charges under the provisions of rule 36 (b) (1) (D), without regard to whether there was any time excludable under rule 36 (b) (2).[2]

Although dismissal of the charges was not required pursuant to rule 36 (b) (1) (D), a defendant may also rely on rule 36 (c), which provides for dismissal of charges if the prosecution has been unreasonably lacking in diligence in bringing the defendant to trial and if "this conduct on the part of the prosecuting attorney has resulted in prejudice to

---

[1] The difference in the two dates is not significant in this case, as we point out below. The judge who heard the motion for dismissal for lack of a speedy trial ruled that the triggering date was the date on which the rescript was docketed in the Superior Court clerk's office. We express no opinion as to the correctness of this choice.

[2] The defendant was tried and convicted on unrelated charges during a two-day trial in February, 1982. Although it was not important to his decision, the motion judge excluded two days in measuring the relevant period. The defendant apparently had not been sentenced on the unrelated charges when the motion for dismissal of the present charges was filed on April 1, 1982. The Commonwealth does not argue here that all the time between the commencement of the February, 1982, trial and April 1, 1982, was excludable because of circumstances connected with the unrelated charges. See, however, rule 36 (b) (2) (A) (iii), 378 Mass. 909 (1979), which excludes "delay resulting from a trial with respect to other charges against the defendant, which period shall run from the commencement of such other trial until fourteen days after an acquittal or imposition of sentence."

the defendant." Considering the provisions of rule 36 (c), we see no showing of prejudice to the defendant resulting from the delay, even if we were to assume the prosecution was unreasonably lacking in diligence in bringing the defendant to trial. The defendant was not incarcerated during his appeal or before his retrial. The Commonwealth's case was based on eyewitness testimony. The defendant does not argue that his defense was impaired because of the delay.

In terms of constitutional requirements, the length of the delay may well warrant an investigation of the factors discussed in *Barker* v. *Wingo,* 407 U.S. 514 (1972). See *Commonwealth* v. *Boyd,* 367 Mass. 169, 180 (1975); *Commonwealth* v. *Gove,* 366 Mass. 351, 362 & n.13 (1974). The reason for the delay is not explained on the record, but the defendant did not assert his right to a speedy retrial before April 1, 1982 (see *Barker* v. *Wingo, supra* at 536; *Commonwealth* v. *Look,* 379 Mass. 893, 900-901, cert. denied, 449 U.S. 827 [1980]), and, as we have already noted, the defendant has not demonstrated that he was prejudiced by the delay (see *Barker* v. *Wingo, supra* at 532; *Commonwealth* v. *Gilbert,* 366 Mass. 18, 22-23 [1974]). The defendant has not shown that he was denied his constitutional right to a speedy trial.

2. We agree with the conclusion that the victim's in-court identification was not tainted by the appearance of the defendant before the victim immediately following the unlawful arrest of the defendant. The burden on the Commonwealth was to show by clear and convincing evidence that the in-court identification was a product of the witness's recollections of his assailant at the scene of the crime, and thus the in-court identification had a source independent of the earlier unlawful confrontation. See *United States* v. *Wade,* 388 U.S. 218, 240 (1967); *Commonwealth* v. *Botelho,* 369 Mass. 860, 868 (1976). On this ultimate question, as distinguished from subsidiary findings of fact, we exercise our independent judgment. See *Commonwealth* v. *Jackson,* 377 Mass. 319, 332 (1979); *Com-*

*monwealth* v. *Murphy*, 362 Mass. 542, 551 (1972) (Hennessey, J., concurring).

We summarize the judge's findings on the motion to suppress. The victim, a physician, left Boston City Hospital about 9 P.M. on October 1, 1979, and walked north on the median strip of Massachusetts Avenue toward his home in the Back Bay section of Boston. The doctor noticed three black males walking toward him to his right. The lighting was "reasonable," and the victim could "quite easily" see what was going on. Two of the men grabbed the victim. One of the three, later identified as the defendant, had a roundish face and was wearing a short brimmed, brown cap and a brown trench coat. The judge concluded from his own observation of the defendant that the defendant was a very distinctive looking person. One of the men had a knife. They took the victim's watch and wallet. The victim was severely cut on two fingers. One of the three men was also cut in a scuffle. The men left, and the doctor returned to the hospital for treatment.

Shortly thereafter two Boston police officers noticed the defendant and another man, who was bleeding from the hand, running in the area. They stopped the two men and then inquired by radio to determine whether there had been any problems. They learned of the assault on the doctor and brought the two men to the emergency room at the hospital. The victim was then being treated. He did not look at the men closely, and he said nothing immediately. After the men were taken away from the victim, he told the police officers that they looked like two of his assailants but that he could not be sure. A few minutes later the defendant was brought in alone, then, according to the evidence, wearing his cap. The victim "recognized him immediately looking at him face to face for the first time," apparently believing the defendant had not been shown to him before. The victim testified, and the judge found, that the victim based his identification of the defendant on his original observations at the scene of the crime. Based in part on this fact and the defendant's "very distinctive appearance," the

judge ruled that the victim's identification of the defendant was not tainted by the confrontations at the hospital.

We agree with the judge's conclusions. Among the considerations that may be relevant in determining whether in-court identification testimony has an independent source are (1) the extent of the witness's opportunity to observe the perpetrator of the crime, (2) any errors in the witness's description of the criminal, (3) any misidentification of the criminal, (4) any failure to identify the defendant, (5) the receipt by the witness of any suggestions, and (6) the lapse of time between the crime and the identification. See *United States* v. *Wade,* 388 U.S. 218, 241 (1967); *Commonwealth* v. *Botelho,* 369 Mass. 860, 869 (1976). Of all the factors, the nature of the witness's opportunity to observe the criminal at the time of the crime is the most important because the firmer the contemporaneous impression, the less the witness is subject to the influence of subsequent events. See *Commonwealth* v. *Ross,* 361 Mass. 665, 671-672 (1972), judgment vacated on other grounds, 410 U.S. 901, aff'd on remand, 363 Mass. 665, cert. denied, 414 U.S. 1080 (1973). In numerous cases upholding the admissibility of in-court identification testimony, we have recognized the importance of the conditions under which the observation took place and the duration of the witness's observations. See *Commonwealth* v. *Venios,* 378 Mass. 24, 25 (1979) (five-minute view, well lighted area); *Commonwealth* v. *Jackson,* 377 Mass. 319, 330-331 (1979) (five minutes, well lighted); *Commonwealth* v. *Jones,* 362 Mass. 497, 498, 504 (1972) (three minutes, adequate lighting, close range); *Commonwealth* v. *Finn,* 362 Mass. 206, 207 (1972) (two to three minutes, good lighting, close range); *Commonwealth* v. *McGrath,* 361 Mass. 431, 436 (1972) (twenty minutes, clear view); *Commonwealth* v. *Tempesta,* 361 Mass. 191, 192, 194 n.5 (1972) (ten minutes, "ample" lighting); *Commonwealth* v. *Cefalo,* 357 Mass. 255, 257 (1970) (thirty seconds to one minute, close range); *Commonwealth* v. *Frank,* 357 Mass. 250, 252 (1970) (ten to fifteen minutes); *Commonwealth* v. *Robinson,* 355 Mass.

620, 621 (1969) (one minute, adequate lighting from street lamps). Cf. *Commonwealth* v. *Guillory,* 356 Mass. 591, 593-594 (1970) (poor lighting and discrepancies in the witness's statements support the finding of inadmissibility). Here, the motion judge found that the witness could "quite easily" observe his assailants during the incident which, according to the witness's testimony, lasted between five and ten minutes.

Additional factors support the admissibility of the in-court identification. Assertions by a witness that his identification is based on his recollection of the crime may be relied on in passing on such a motion to suppress. See *Commonwealth* v. *Wilson,* 360 Mass. 557, 562-563 (1971); *Commonwealth* v. *Robinson,* 355 Mass. 620, 622 (1969). Cf. *Commonwealth* v. *Kazonis,* 356 Mass. 649, 653 (1970) (witness's failure to make such an assertion supported a conclusion that the "clear and convincing" standard had not been met). Also relevant are the judge's conclusions concerning the witness's capacity to remember (see *Commonwealth* v. *Robinson, supra* at 622), and the witness's intelligence (*Commonwealth* v. *Frank,* 357 Mass. 250, 252 [1970]).

The only aspect of this case arguably pointing to suppression of the in-court identification is the victim's failure to identify the defendant positively when he first saw him at the hospital. Such an omission has not been necessarily fatal to a ruling that an identification had an independent source. See *Commonwealth* v. *Jackson,* 377 Mass. 319, 329-332 (1979) (failure to identify photographs); *Commonwealth* v. *Roberts,* 362 Mass. 357, 361, 364 (1972) (same). It has, however, been a factor in finding that an identification was tainted. See *Commonwealth* v. *Botelho,* 369 Mass. 860, 862-863, 868-869 (1976), and *Commonwealth* v. *Kazonis,* 356 Mass. 649, 653 (1970), where, however, additionally, the respective witnesses' opportunities to observe the perpetrator of the crime were poor.

Considering the circumstances under which the victim first saw the defendant at the hospital when a positive iden-

tification was not made, and the circumstances of the observation made a few minutes later when a positive identification was made, we regard the initial failure to make a positive identification as insignificant. The victim's observation of the defendant at the time of the crime, considered with all the circumstances, clearly and convincingly justifies the conclusion that the in-court identification of the defendant was not tainted by the observations at the hospital. The motion to suppress the victim's in-court identification of the defendant was properly denied.[3]

*Judgments affirmed.*

[3] We add a comment on the unnecessarily abrasive treatment of defense counsel by the judge who heard the motion to suppress. The problem appears in several places in the transcript. We cite only two examples. (1) THE JUDGE: "I don't want to hear from you. Keep your mouth shut, Mr. [defense counsel], until I finish my conversation with Officer [T]." (2) This colloquy appears at the end of the transcript: DEFENSE COUNSEL: "May I approach the side bar on an important issue?" THE JUDGE: "Denied. I'm going to have you taken out of this courtroom unless you leave right now. I've had enough of you. Do you hear me? Now, out."

The transcript does not provide any justification for the judge's aggressive attitude toward defense counsel. We note that this same defense counsel had obtained a reversal of this judge's earlier ruling on the motion to suppress in this case. *Commonwealth* v. *Bodden,* 11 Mass. App. Ct. 964 (1981). Even if counsel's conduct is provocative, a judge should not depart from his obligations as a judge. See *Matter of Donohue,* 390 Mass. 514, 519 (1983).