## Robert Foxworth *vs*. Peter St. Amand.

Suffolk. April 5, 2010. - July 2, 2010.

Present: Marshall, C.J., Ireland, Spina, Cowin, Cordy, Botsford, & Gants, JJ.

*Practice, Criminal*, Rescript from appellate court, Judgment, Conviction. *Supreme Judicial Court*, Further appellate review.

This court, by considering a petitioner's application, originally filed in 2000 and amended in 2002, for leave to obtain further appellate review of a 1996 decision of the Massachusetts Appeals Court, did not reopen the finality of the petitioner's conviction when, in 2002, it allowed the defendant's motion to file the application late and then denied the amended application. [204-209]

Certification of a question of law to the Supreme Judicial Court by the United States Court of Appeals for the First Circuit.

*John M. Thompson* (*Linda J. Thompson* with him) for the plaintiff.

*Susanne G. Reardon*, Assistant Attorney General, for the defendant.

Botsford, J. In 1992, after trial in the Superior Court, Robert Foxworth was convicted of murder in the second degree; the Appeals Court affirmed the conviction in 1996. *Commonwealth* v. *Foxworth*, 41 Mass. App. Ct. 1113 (1996). Reviewing Foxworth's subsequent petition for habeas corpus relief pursuant to 28 U.S.C. § 2254 (2006), the United States Court of Appeals for the First Circuit (First Circuit)[1] has certified the following question to this court, pursuant to S.J.C. Rule 1:03, as appearing in 382 Mass. 700 (1981):

"In considering the petitioner's application, filed in 2000, for leave to obtain further appellate review of the 1996

---

[1] We refer to the United States Court of Appeals for the First Circuit as the "First Circuit" to avoid any confusion between that court and the Massachusetts Appeals Court.

Massachusetts Appeals Court decision, did the Supreme Judicial Court reopen the finality of the petitioner's conviction in 2002?"

*Foxworth* v. *St. Amand*, 570 F.3d 414, 437 (1st Cir. 2009) (*Foxworth*).[2] For the reasons that follow, we answer the question no.

*Background.* The procedural history of this case in both the State and Federal courts is set out in detail in the First Circuit's opinion accompanying the certification order. See *Foxworth, supra* at 420-424. We summarize those procedural facts that bear on the certified question. In March of 1992, Foxworth and two codefendants were tried in the Superior Court on indictments charging each of them with murder in the first degree. Foxworth had moved unsuccessfully before trial to sever his case from his codefendants on the ground that he would be prejudiced by the introduction of a statement one of his codefendants, Troy Logan, had given to the police. At trial, Logan's statement was introduced in evidence (over Foxworth's timely objection) through a police detective, but the statement was redacted or altered in several places to substitute the term "Mr. X" for Foxworth's name. See *id.* at 421-422. On March 31, 1992, a jury convicted Foxworth of murder in the second degree, and acquitted Logan.[3] Foxworth filed a timely appeal from his conviction. On March 16, 1994, he filed a motion for new trial in the Superior Court pursuant to Mass. R. Crim. P. 30 (b), 378 Mass. 900 (1979) (first new trial motion). In his first new trial motion, Foxworth asserted, among other claims, that the admission of his codefendant's statement in evidence at trial contravened *Bruton* v. *United States*, 391 U.S. 123 (1968) (*Bruton*). A judge in the Superior Court (not the trial judge) denied Foxworth's first new trial motion in August, 1994. Thereafter, the Appeals Court consolidated Foxworth's appeal from that denial with his direct appeal from his conviction, and affirmed both the conviction and the denial of the new trial mo-

---

[2]The defendant in this case, Peter St. Amand, is the superintendent of the Massachusetts Correctional Institution at Cedar Junction, and in that capacity is named as the respondent in the habeas corpus proceeding at issue, *Foxworth* v. *St. Amand*, 570 F.3d 414 (1st Cir. 2009) (*Foxworth*).

[3]Before the case went to the jury, the trial judge granted the third defendant's motion for a required finding of not guilty on all charges against him. See *Foxworth*, 570 F.3d at 422.

tion in a decision issued pursuant to that court's rule 1:28 on October 21, 1996. *Commonwealth* v. *Foxworth, supra.* One of the grounds of appeal raised by Foxworth, and considered by the Appeals Court, was his claim of a *Bruton* violation.

Pursuant to Mass. R. A. P. 27.1 (a), as amended, 369 Mass. 920 (1975), Foxworth had twenty days from October 21, 1996, in which to file an application for further appellate review. No such application was filed within the prescribed period. In accordance with Mass. R. A. P. 23, as appearing in 367 Mass. 921 (1975), therefore, the Appeals Court's rescript issued to the trial court on November 18, 1996. On November 22, 1996, the rescript, indicating "Judgment affirmed," was entered on the docket in the Superior Court.

Almost four years later, on October 25, 2000, Foxworth filed in this court a pro se application for leave to obtain further appellate review (FAR application), accompanied by a motion to file the FAR application late. One of the grounds asserted for obtaining further appellate review was the alleged *Bruton* violation. In November, 2000, before the court acted on his application and motion to file the application late, Foxworth filed, and this court allowed, a motion to stay action on his requests in order to allow Foxworth to pursue a second motion for a new trial. Foxworth filed pro se his second new trial motion in the Superior Court in December, 2000; the motion did not raise the *Bruton* violation claim. *Foxworth,* 570 F.3d at 423. Another Superior Court judge denied the second motion, and the Appeals Court affirmed its denial in a brief memorandum and order dated April 17, 2002. *Commonwealth* v. *Foxworth,* 54 Mass. App. Ct. 1112 (2002).

Thereafter, on July 22, 2002, Foxworth, now represented by counsel, filed in this court an amended FAR application that represented a consolidation of his original 2000 FAR application with another FAR application concerning the Appeals Court's 2002 decision. He also filed a motion to file the application late; the court allowed that motion on July 22.[4] On September 6,

---

[4]As the First Circuit noted, the record is ambiguous concerning whether the July 22, 2002, order on the "motion to file FAR late" was intended to be, or had the effect of, an allowance of the late filing of the first FAR application four years late. See *Foxworth,* 570 F.3d at 423. We interpret the order as allowing, inter alia, the late filing of the first FAR application.

2002, we denied Foxworth's amended FAR application without opinion or comment.[5]

On September 10, 2003, Foxworth filed a petition for habeas corpus in the United States District Court for the District of Massachusetts. Lengthy proceedings in the Federal courts ensued. In summary, on August 17, 2006, a District Court judge initially granted Foxworth's petition on the basis of the claimed *Bruton* violation, vacated his conviction, and ordered the Commonwealth to retry Foxworth within sixty days or release him; on appeal by the Commonwealth, the First Circuit remanded the case to the District Court judge to address Foxworth's claim of insufficient evidence; on remand, in May of 2008, that judge concluded that the evidence was insufficient to support Foxworth's conviction and ordered his release; and on the Commonwealth's appeal, the First Circuit certified to this court the question now before us. See *Foxworth*, 570 F.3d at 423-424, 437.

The certified question is relevant to the First Circuit's review of the habeas petition because that court has concluded, in contrast to the District Court judge, that the evidence presented at Foxworth's trial was sufficient to sustain his conviction, see *id.* at 428-429, and that the remaining pertinent question is whether Foxworth's *Bruton* violation claim entitles him to relief. In the view of the First Circuit, the answer to that question turns on the date on which Foxworth's direct appeal from his conviction was final, because for Federal habeas relief to be granted, the State court's decision is to be "measured against 'clearly established Federal law, as determined by the Supreme Court of the United States.' In most cases (and, specifically, in this case), the date of finality of the state court conviction determines the time line to be used for determining what Supreme Court decisions comprise the corpus of this 'clearly established Federal law.' " *Id.* at 430, quoting 28 U.S.C. § 2254(d).[6] Compare *Griffith* v. *Kentucky*, 479 U.S. 314, 322-323 (1987)

---

[5]It appears that Foxworth's initial pro se motion to file late was never acted on.

[6]The First Circuit defined "finality" as follows: "Finality means that 'a judgment of conviction has been rendered, the availability of appeal exhausted, and the time for a petition for certiorari [has] elapsed or a petition for certiorari [filed and] finally denied.' " *Foxworth*, 570 F.3d at 431, quoting *Griffith* v. *Kentucky*, 479 U.S. 314, 321 n.6 (1987). Accord *Caspari* v. *Bohlen*, 510 U.S.

(newly declared constitutional rule must be applied to all criminal cases then pending on direct review), with *Teague* v. *Lane*, 489 U.S. 288, 310 (1989) (opinion of O'Connor, J.) (with limited exceptions, new constitutional rules do not apply to cases on collateral review that have become final before new rules announced).

The First Circuit considered that there were two possible dates of finality in the present case: (1) November 18, 1996, the date the Massachusetts Appeals Court's rescript issued, concluding that court's consideration of Foxworth's direct appeal; or (2) September 6, 2002, the date that this court denied Foxworth's amended FAR application. *Foxworth*, 570 F.3d at 430. The difference in these dates is critical to the First Circuit's resolution of Foxworth's habeas corpus petition. That court has concluded that if the 1996 date were to represent the end of direct review in Foxworth's case, he would not be entitled to habeas corpus relief, because, based on the Supreme Court's decision in *Richardson* v. *Marsh*, 481 U.S. 200 (1987), the Appeals Court's rejection of Foxworth's *Bruton* claim "was not an unreasonable application of clearly established Federal law." *Foxworth*, *supra* at 433. See *id.* at 436. If, on the other hand, the 2002 date defined finality for the direct review process, Foxworth's habeas petition should be granted because the Supreme Court's decision in *Gray* v. *Maryland*, 523 U.S. 185 (1998), would then apply, and the Appeals Court's decision on the claimed *Bruton* violation represented an unreasonable application of *Gray*. *Foxworth*, *supra* at 434-435, 436.

*Discussion.* We accept the premise of the First Circuit, that the "date of finality" of a State court judgment (see note 6, *supra*) is a matter to be determined with reference to State law. See *Foxworth*, 570 F.3d at 429, 437. See also *Losh* v. *Fabian*, 592 F.3d 820, 824-825 (8th Cir. 2010) (State Supreme Court could determine whether particular type of appeal permitted under State law qualified as part of direct review of criminal conviction and sentence, or form of collateral review). Cf. *Carey* v. *Saffold*, 536 U.S. 214, 223 (2002) ("for purposes of applying

383, 390 (1994). We understand the phrase "availability of appeal exhausted" to refer to the availability of *direct* appeal from the judgment of conviction. We do not consider here preconviction interlocutory appeals or postconviction collateral appeals.

a federal statute that interacts with state procedural rules, we look to how a state procedure functions"). But see *Teas* v. *Endicott*, 494 F.3d 580, 582 (7th Cir. 2007) (definition of "direct review" in 28 U.S.C. § 2244[d] [2006] is matter of Federal law). In the Commonwealth, the determination of the finality date is derived primarily from the Massachusetts Rules of Appellate Procedure and associated statutes. Every defendant in a criminal case has the right to bring an appeal from, and obtain direct review of, a conviction. G. L. c. 278, § 28. With one exception not relevant here, the Appeals Court and this court share concurrent jurisdiction over criminal appeals. The direct appeal is entered in the Appeals Court in the first instance, and in most cases (as in this case), the appeal is heard and decided by the Appeals Court. See G. L. c. 211A, § 10. In such an appeal, when the Appeals Court issues its opinion, the clerk of that court mails a copy of the opinion and the "rescript" — in effect, the Appeals Court's judgment in that case[7] — to the parties, and then issues the rescript to the lower court twenty-eight days after the date of the rescript. Mass. R. A. P. 23.[8]

As rule 23 indicates, the reason for the twenty-eight day

---

[7]The word "rescript" is defined in Mass. R. A. P. 1 (c), 365 Mass. 844 (1974), to mean "the order, direction, or mandate of the appellate court disposing of the appeal." Reporters' Notes to Rule 1, Mass. Ann. Laws Court Rules, Rules of Appellate Procedure, at 6 (LexisNexis 2008-2009) (" 'Rescript,' a term well-known to Massachusetts practice, covers the meaning of 'mandate,' the term used in the Federal Rules, [Rule] 41 [of the Federal Rules of Appellate Procedure]"). See also Reporters' Notes to Rule 23, Mass. Ann. Laws Court Rules, Rules of Appellate Procedure, *supra* at 97 ("A rescript is the equivalent at the appellate level, of judgment in the trial court . . .").

[8]Rule 23 of the Massachusetts Rules of Appellate Procedure, as appearing in 367 Mass. 921 (1975), reads:

> "The clerk of the appellate court shall mail to all parties a copy of the rescript and the opinion, if one was written. The rescript of the court shall issue to the lower court twenty-eight days after the date of the rescript unless the time is shortened or enlarged by order. The timely filing of a petition for rehearing or of an application for further appellate review will stay the rescript until disposition of the petition or application unless otherwise ordered by the appellate court. If the petition or application is denied, the rescript shall issue forthwith unless the appellate court or a single justice orders otherwise. If an application for further appellate review is granted the rescript of the Appeals Court shall not issue to the lower court."

delay in issuance of the rescript to the lower court is to accommodate a party's twenty-day right to seek further appellate review of the case by this court[9] pursuant to G. L. c. 211A, § 11, and rule 27.1.[10] If the FAR application is timely filed (i.e., within twenty days), the Appeals Court's rescript is stayed until this court rules on the application. If we deny the FAR application, the Appeals Court's rescript then issues forthwith to the lower court; if the application is allowed, the Appeals Court's rescript does not so issue, but instead, a rescript from this court will issue pursuant to rule 23 at the time we issue our decision in the case. The gist of these rules, taken together, is that when a rescript does issue to the lower court — whether the rescript is issued by the Appeals Court or this court — that signals the end of the direct review process for the case. As the First Circuit suggested, *Foxworth*, 570 F.3d at 436-437, the date the rescript issues thus represents "the date of finality" for the case,[11] and it is a date that expressly includes within its scope the opportunity to file a timely FAR application and the resolution of any such application that is timely filed.[12]

The certified question asks whether the finality of Foxworth's

---

[9]The twenty-eight days also accommodates a party's right under Mass. R. A. P. 27, as amended, 410 Mass. 1602 (1991), to petition the Appeals Court for rehearing within fourteen days of the date of the rescript. We focus here, however, solely on the right to file the FAR application.

[10]Rule 27.1 of the Massachusetts Rules of Appellate Procedure, as amended, 367 Mass. 920 (1975), entitled "Further Appellate Review," provides in relevant part: "(a) Application; when filed; grounds. Within twenty days after the date of the rescript of the Appeals Court any party to the appeal may file an application for leave to obtain further appellate review of the case by the full Supreme Judicial Court. Such application shall be founded upon substantial reasons affecting the public interest or the interests of justice."

[11]One might argue that, although the direct appeal concluded with the issuance of the Appeals Court's rescript on November 18, 1996, the judgment of conviction in this case did not truly become final until the rescript was entered on the Superior Court docket four days later, on November 22, 1996. Cf. *Commonwealth* v. *Bodden*, 391 Mass. 356, 357-358 & n.1 (1984) (leaving open question of finality for purposes of Mass. R. Crim. P. 36, 378 Mass. 909 [1979], governing speedy trial following reversal of conviction by appellate court); *Commonwealth* v. *Levin*, 390 Mass. 857, 860 n.4 (1984) (same). We need not resolve that point here, as the difference of four days is inconsequential to the outcome in both this court and the First Circuit.

[12]Case law has also recognized that a party's entitlement to request further appellate review must be taken into account before the direct appeal process is deemed complete. See *Sabatinelli* v. *Travelers Ins. Co.*, 369 Mass. 674, 679

judgment of conviction was reopened when this court in 2002 allowed him to file a FAR application late and then denied the application. The key to our answer is the rescript. As discussed, when a rescript of the Appeals Court issues to the lower court, that signifies the end of the direct appeal process, because as rule 23 makes plain, it means either that the defendant did not file a timely FAR application or that the application he did file was denied, and therefore all available avenues for direct review under our State law are exhausted. See *Caspari v. Bohlen*, 510 U.S. 383, 390-391 (1994). If a defendant in the first category (no FAR application timely filed) subsequently files a motion to file a FAR application late, the allowance of such a motion[13] by itself has no effect on the previously issued rescript: no rule or statute, including, most importantly, rule 23, provides for any change in the status of an issued rescript solely as a result of this court's discretionary allowance of a motion to file late. Accordingly, the final judgment reflected in the entry of the rescript on the trial court's docket remains the final judgment. Cf. *Beard v. Banks*, 542 U.S. 406, 412 (2004) (fact that State court might choose to waive its procedural rule barring consideration in postconviction proceedings of claims not previously raised did not render underlying judgment of conviction non-final).

Foxworth argues to the contrary, claiming that when a court decides to allow a motion to file a FAR application late, it "raise[s] the question whether the court will modify the judgment and alter the parties' rights," *Hibbs v. Winn*, 542 U.S. 88, 98 (2004), and therefore suspends the finality of the judgment. We disagree. The *Hibbs* case, as well as *Young v. Harper*, 520 U.S. 143, 147 n.1 (1997), on which Foxworth also relies, are

(1976) ("it is important to note that action of the Appeals Court under Rule 1:28 does not conclude a case. The losing party is entitled to request further appellate review by this court . . . [which] may be granted by three Justices of this court 'for substantial reasons affecting the public interest or the interests of justice.' G. L. c. 211, § 11"). See also *Schwartz v. Bressler*, 5 Mass. App. Ct. 796 (1977). Neither of these cases, however, considers the difference between timely and late-filed FAR applications, let alone a FAR application filed after the issuance of the Appeals Court's rescript as we have here.

[13]We frequently, but not always, allow motions to file FAR applications late. Compare *Commonwealth v. O'Neil*, 436 Mass. 1007, 1008 n.1 (2002), with *Hurley v. Superior Court Dep't of the Trial Court*, 424 Mass. 1008, 1009 (1997).

distinguishable. Neither case involved a situation where the appellate rescript (or "mandate" in Federal parlance) had issued and thereby remained intact at all relevant times.[14] But that is the issue here, and as we have indicated, as a matter of State law, under our statutes and court rules, the allowance of a motion to file an FAR application late, by itself, does not operate to change the status of a rescript that has previously issued. Nor does a subsequent denial of the late-filed application. Such a denial is nothing more than an indication that we have determined, in our discretion, not to grant further review. It is not an indorsement, acceptance, or ratification by us of the Appeals Court's decision. See *Ford* v. *Flaherty*, 364 Mass. 382, 387-388 (1973) ("An order by this court denying further review should not be considered in any case as an affirmation of the decision or reasoning of the Appeals Court. Such an order merely shows that, after consideration of the applicable statutory standards as set forth in G. L. c. 211A, § 11, we have determined not to grant further review. Only a rescript or rescript and opinion from this court, after further review, should be considered as a statement of our position on the legal issues concerned").[15]

Foxworth's reliance on the recent decision of the United

[14]In *Hibbs* v. *Winn*, 542 U.S. 88 (2004), the ninety-day period for seeking certiorari had not yet passed when the United States Court of Appeals for the Ninth Circuit Court recalled its mandate and directed the parties to brief the question whether the case should be reheard en banc. Given the recall of the mandate by the court itself, it is not surprising that the Supreme Court held that "[b]ecause [the] 90-day limit had not yet expired, the clock could still be reset by an order that left unresolved whether the [Ninth Circuit] would modify its judgment." *Id.* at 98. Here, by contrast, we did not recall (or make any other order with respect to) the Appeals Court's 1996 rescript when we authorized the late filing of the FAR application and denied the application in 2002.

In *Young* v. *Harper*, 520 U.S. 143, 147 n.1 (1997), the United States Court of Appeals for the Tenth Circuit granted the petitioners leave to file their petition two days late, but before the mandate had issued, and the Supreme Court treated both the petition for rehearing and the subsequent petition for certiorari as timely in the circumstances. In the present case, again by contrast, the application for further review was filed nearly four years after the rescript had already issued.

Finally, we note that both the *Hibbs* and *Young* cases involved points of Federal law; the limited question that has been certified to us is whether the Foxworth's conviction, which became final in 1996, was reopened by us in 2002 as a matter of State law.

[15]In the brief filed on behalf of St. Amand, the Attorney General takes the

States Supreme Court in *Jimenez* v. *Quarterman*, 129 S. Ct. 681 (2009), is also misplaced. In that case, the Court concluded that for purposes of measuring the one-year limitations period imposed by 28 U.S.C. § 2244(d)(1)(A), for filing a writ of habeas corpus in Federal court, a State court judgment of conviction is no longer "final" if the State court grants a defendant the right to file a late or "out-of-time" direct appeal. *Id.* at 685-686. Rather, the Court stated, " 'the order granting an out-of-time appeal restore[d] the pendency of the direct appeal,' . . . and petitioner's conviction was again capable of modification through direct appeal to the state courts and to this Court on certiorari review." *Id.* at 686, quoting *Ex parte Torres*, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997). Had we granted the late-filed FAR application, thereby effectively reinstating the direct appeal, then *Jimenez* v. *Quarterman*, *supra*, might be applicable. See note 15, *supra*. Here, however, we denied rather than granted Foxworth's late-filed FAR application. We did not reinstate the direct appeal or reopen the conviction in any other way.

*Conclusion.* We respond to the certified question as follows: This court did not reopen the finality of the petitioner Robert Foxworth's 1992 conviction in 2002.

The Reporter of Decisions is to furnish attested copies of this opinion to the clerk of this court. The clerk in turn will transmit one copy, under the seal of this court, to the clerk of the United States Court of Appeals for the First Circuit, as the answer to the question certified, and will also transmit a copy to each party.

---

position that if the court *grants* a late-filed FAR application after a rescript has issued, that allowance effectively reopens the final judgment. We do not need to resolve the issue in order to answer the First Circuit's question, but the Commonwealth's position finds support in the fact that if this court does grant a late-filed application, it is treated procedurally in the same manner as a timely FAR application. At the time we issue our decision in the case, under rule 23, a new rescript will issue to the lower court, and the new rescript will be entered on the lower court's docket.